1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

THE GEO GROUP, INC.,

                              Plaintiff,

          v.

CITY OF TACOMA, a Washington municipal
corporation,

                              Defendant.

No.

**COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF**

For its complaint, plaintiff The GEO Group, Inc. (GEO) alleges as follows:

### INTRODUCTION

1.      This is an action pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment
Act, 28 U.S.C. § 2201, to enjoin the application of and invalidate City of Tacoma Ordinance
No. 28491, enacted on February 20, 2018 (the Subject Ordinance).  The Subject Ordinance
purports to restrict the current use of GEO's real property in the City of Tacoma for the
Northwest Detention Center (NWDC), a federal immigration processing and detention facility
owned and operated by GEO on behalf of and under contract with the United States
Immigration and Customs Enforcement (ICE), an agency of the Department of Homeland
Security (DHS).

2.      The Subject Ordinance not only threatens to interfere with GEO's future use of
its property, it also threatens GEO's ability to perform under its federal contract with ICE. The

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF — 1
4815-0372-4614v.14 0088835-000005

NWDC contract requires GEO to provide a variety of services to ICE and places a large portion of NWDC under the federal government's direct control, including an on-site federal immigration court and facilities for medical treatment of ICE's detainees residing at NWDC. GEO's and ICE's operations at NWDC are inextricably linked, and directly support the federal government's implementation of national immigration, customs, and security-related laws and policies—all matters that are beyond the City's land use regulatory jurisdiction.

3.      While the Subject Ordinance purports to be a land use control ordinance, the circumstances surrounding its adoption clearly indicate that the City intended to restrict the future operation and expansion of NWDC in an attempt to hamper ICE's ability to carry out core federal functions related to immigration.  For this reason, and for the reasons set forth in further detail below, GEO seeks an order invalidating and enjoining application of the Subject Ordinance against GEO or NWDC.

## PARTIES

4.      GEO is a publicly-traded for-profit company headquartered in the State of Florida.  Since 1984, GEO has been a leading provider of contracted correctional and community reentry services for federal, state and local government agencies in the United States.  GEO is currently the world's leading private provider of contracted correctional, detention, and community reentry services with 140 facilities, approximately 96,000 beds, and 20,500 employees around the globe.  GEO contracts to provide services directly to federal agencies, such as ICE, the Bureau of Prisons and the U.S. Marshals Service.  GEO owns and operates the NWDC on behalf of and pursuant to a contract with ICE.  NWDC is subject to and adversely affected by the Subject Ordinance.

5.      Defendant City of Tacoma (City) is a Washington municipal corporation.  The City, acting through its City Council, adopted the Subject Ordinance.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action under 28 U.S.C. § 1331 because GEO alleges a violation of its rights which it seeks to remedy pursuant to 42 U.S.C. § 1983.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF — 2
4815-0372-4614v.14 0088835-000005

Davis Wright Tremaine LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101-3045

This statute creates a cause of action, at law and in equity, for private parties whose rights are deprived under color of any local law, policy, or custom, including those of municipal governments.

7.     The Court may declare the legal rights and obligations of the parties in this action pursuant to 28 U.S.C. § 2201 because the action presents an actual case or controversy within the Court's jurisdiction.

8.     Venue is proper in this Court under 28 U.S.C. § 1391 because the City operates in this judicial district and the conduct complained of occurred and/or resulted in injury to GEO in this judicial district.

**FACTUAL ALLEGATIONS**

**Development and Expansion of NWDC with City Assistance and Support**

9.     The federal immigration detention facility now known as the NWDC was initially proposed to alleviate overcrowding experienced in the King County immigration facility operated by ICE's predecessor, U.S. Immigration and Naturalization Service (INS), in the years leading up to 2000.  At that time, the federal government's objective was to construct a facility to provide for the safe and humane detention of up to 500 immigration detainees, with associated office and administration spaces, on-site immigration courts, transportation and detainee services, visitor parking and detainee visitation space.

10.     Correctional Services Corporation (CSC), GEO's predecessor in interest with respect to NWDC, was involved in the initial siting of the facility and operated it until CSC's acquisition by GEO in 2005, at which time GEO assumed operations.

11.     As a result of the regional, public siting process carried out by ICE with the participation of the City, Pierce County, the Port of Tacoma and other public and private parties, two sites were identified for the development of NWDC in Tacoma.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF — 3
4815-0372-4614v.14 0088835-000005

Davis Wright Tremaine LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101-3045

12.     The City actively participated in ICE's site selection process, and successfully advocated for ICE to select the current, "J" Street location (the GEO Property) for NWDC.

13.     Tacoma's City Council unanimously passed Resolution 34722 on March 28, 2000, to publicly declare its support for CSC (now GEO), citing the company's "excellent reputation," and encouraging development of the GEO Property for immigration detention processing.  Among the publicly-acknowledged benefits of the development of the NWDC on the GEO Property, the City touted the "more than $40 million" invested in the community, and the "hundreds of family-wage job opportunities" that the facility would provide.

14.     Local and state officials not only actively lobbied for NWDC to site within the City during its original development, they also helped facilitate financing of the facility. Washington's Economic Development Finance Authority (WEDFA), an independent agency within the executive branch of state government, facilitated construction of NWDC by soliciting and issuing over $57,000,000 in economic development revenue bonds in 2003, and over $54,000,000 in bonds to finance NWDC's expansion in 2011, each with the express approval of Washington's then-current governors (Gary Locke and Christine Gregoire).   To help secure these funds, City Councilmember Kevin Phelps wrote to WEDFA to assure investors that Tacoma welcomed and supported the development of the NWDC.

15.     NWDC, the only dedicated immigration detention center active within the State of Washington, opened on the GEO Property in April of 2004, and was expanded in 2006 to bring the bed count up to 1,000.[1]  GEO completed a more extensive expansion in 2008, totaling approximately $43,000,000, including housing for an additional 553 people, as well as transportation, maintenance, and administrative support buildings.  The NWDC was permitted outright as a "correctional facility" when originally constructed (in the "M-3," Heavy Industrial

---

[1] ICE also utilizes FDC SeaTac, a Bureau of Prisons facility, to house detainees awaiting deportation.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF — 4
4815-0372-4614v.14 0088835-000005

Davis Wright Tremaine LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101-3045

zone), and continued to be permitted outright when the City later rezoned the GEO Property to "PMI," Port Maritime and Industrial and eliminated the M-3 zoning district across the City. Because the NWDC was permitted outright as a "correctional facility," the City approved its original development and subsequent expansions through the issuance of ministerial building and grading permits. The City further recognized NWDC's status as an "essential public facility" under Washington's Growth Management Act, meaning that the City could not use its comprehensive plan or development regulations to preclude siting NWDC in Tacoma.

### The NWDC's Current Facilities

16.     The NWDC currently comprises a 120,500 square foot, low-rise building complex with several separate housing units (which include segregated quarters) designed to accommodate 1,575 detainees in accordance with ICE and American Correctional Association Standards. The complex includes a central control room outside the housing units, as well as several holding cells designed to accommodate individuals being processed into or out of the facility. An administration and support wing includes operations facilities, kitchen, laundry, storage, and shipping and receiving areas, administrative and office space for personnel of other government agencies, offices, visiting and processing areas, and storage space. There are a total of 86 administrative offices and work cubicles, visitation area, nine interview rooms for attorneys and law enforcement, three federal courtrooms, offices for federal court personnel, employee break rooms, staff locker rooms, a health care unit, a library, file rooms, and two reception areas. The facility also includes approximately 296 on-site parking spaces for use by GEO personnel, ICE personnel, and visitors, as well as secure parking for federal court personnel. Additional vehicle storage and parking for NWDC is located on an adjacent parcel with a building, also owned by GEO, that requires upgrades for training, transportation, and other administrative purposes.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF — 5
4815-0372-4614v.14 0088835-000005

Davis Wright Tremaine LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101-3045

17.     NWDC was generally designed to allow its operator to house and provide services for inmates or detainees from multiple agencies, although under GEO's current contract with ICE, only ICE detainees are allowed at the facility.  Separation of male and female detainees, and further separation of high risk and lower risk detainees within each sex, is maintained by using a central kitchen to prepare meals for delivery to the detention housing pods, and through separate outdoor recreation areas provided for each housing pod.

**GEO's Contract with ICE**

18.     GEO owns the real property and improvements at NWDC, and has contracted with ICE to provide numerous services supporting the federal government's implementation of immigration law and policies, including facilities used exclusively by ICE.  Pursuant to its contract with ICE, GEO is responsible for providing detention management services including the facility itself, personnel, supervision, training, certifications, licenses, uniforms, equipment, and supplies, as well as vehicles and detention management and transportation services 24 hours per day, 7 days a week. GEO also provides living quarters, food service, transportation, processing, and visitation facilities for detainees.

19.     In addition, GEO administers various detainee programs to ensure detainees have opportunities for recreational activities, appropriate accommodations for religious practices, access to commissary goods, and access to telephones and a law library.

20.     The NWDC contract specifically requires GEO to provide a facility that can accommodate 1,575 adult detainees, located within 30 driving miles of Seattle/Tacoma International Airport, and in close proximity to emergency services.

21.     Approximately 24,000 square feet of NWDC, including functional support and operational spaces for court rooms and video teleconferencing, is dedicated for use by approximately 90 ICE and Department of Justice (DOJ) personnel, principally from the ICE

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF — 6
4815-0372-4614v.14 0088835-000005

Davis Wright Tremaine LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101-3045

Office of the Principal Legal Advisor (OPLA) and from the Executive Office for Immigration Review (EOIR), an agency within the DOJ.  The OPLA is a division of DHS and acts as a legal representative for the Department in removal proceedings.  The EOIR is a division of the DOJ, and is responsible for operating the immigration court system.

22.     GEO is contractually required to provide to ICE exclusive possession and use of operational space in NWDC, including administrative offices, workstations, courtrooms, break rooms, supply rooms, and parking.  Federal civil service members employed by ICE, OPLA and EOIR are regularly on-site performing federal job functions at the facility, occupying the areas GEO provides pursuant to its contract.

23.     The base term of GEO's current ICE contract expires on September 27, 2018, though ICE has the option to extend the contract for seven additional one-year periods through September 27, 2025.

**The City's About-Face on NWDC and Systemic Targeting of GEO's Operations**

24.     In a bold about-face regarding NWDC, the City adopted Interim Emergency Ordinance No. 28417 on March 7, 2017 (the Interim Ordinance).  The Interim Ordinance banned "private" correctional facilities (defined to include NWDC) citywide.  It also restricted "public" correctional facilities to certain zones, but only with a CUP.  This Interim Ordinance made NWDC a non-conforming use under the City's Code.  The measure was sponsored and supported by Councilmembers who have publicly opposed President Trump and his immigration policies.

25.     The Interim Ordinance targeted NWDC in all but name.  The legislative record during the adoption of the Interim Ordinance, and the legislative discussions to adopt findings of facts and conclusions of law that ensued thereafter, show the City, from the planning staff level, to the Planning Commission, and ultimately to the City Council, expressly intended the

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF — 7
4815-0372-4614v.14 0088835-000005

Davis Wright Tremaine LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101-3045

Interim Ordinance to not only prohibit NWDC from future expansion, but also prevent the siting of any similar federal facilities associated with the implementation of federal immigration policy within the City's municipal boundaries.  For example, the recitals of the Interim Ordinance state that "given the current political climate and the federal government's actions or intents [sic] with regard to immigration issues the Council would like to prevent the expansion of the existing private facilities."  Multiple statements from City staff and officials make it clear that the City specifically targeted NWDC to prevent its future expansion and disrupt its existing operations through the Interim Ordinance.  City correspondence also shows that the City closely considered how to use the proposed legislation to limit operations at NWDC without affecting other facilities that would be covered, including the existing jail and juvenile detention center.

26.     In the public process required following the City's emergency adoption of the Interim Ordinance, the City generally recognized its prior conclusion that NWDC was an essential public facility that could not be precluded under the Growth Management Act.  GEO had separately filed a Petition for Review with the Central Puget Sound Growth Management Hearings Board challenging the Interim Ordinance based on its preclusion of the siting and reasonable expansion of NWDC, an acknowledged "essential public facility," in violation of the Growth Management Act and its implementing regulations.  Nevertheless, the Planning Commission's review focused on federal immigration policy rather than the legal limits of the City's land use regulatory authority (which does not include matters of federal immigration policy) or any potential land use impacts of correctional and detention facilities siting and operating in the City.  Rather, the City focused on political considerations.  The City's expressed desire to hinder the NWDC's operations was discussed at length.  For example, following a particularly heated and lengthy discussion that once again focused largely on

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF — 8
4815-0372-4614v.14 0088835-000005

Davis Wright Tremaine LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101-3045

federal immigration policy, the Planning Commission failed to reach a consensus necessary to approve and transmit proposed findings and recommendations on the Interim Ordinance to the City Council. On April 21, 2017, then-Chairperson of the Planning Commission (and current City Council member) Beale provided the City Council with a letter on behalf of the Planning Commission reiterating concerns about correctional facilities in the community, including the "current national political environment and the uncertainty it has instigated," and recommended the Council immediately modify the interim regulations "to better align the code language with the Council's intent to prohibit new private correctional facilities *and* the expansion of existing facilities." *Id.* (emphasis added).  In explaining the reasoning behind the interim regulatory changes that prohibit the NWDC and private-run correctional facility expansion and development, Commissioner Beale also wrote:

> The Commission acknowledges and very much appreciates the Council's intent and objectives in enacting the interim regulations, which highlight community concerns about correctional and detention facilities generally . . . The Commission also acknowledges the *sentiment of the community* regarding immigration, social justice and associated issues. *President Donald Trump's xenophobic and racist rhetoric,* coupled with his stated desire to expand detention and deportation efforts, runs in direct conflict with the city's adopted policy to be a welcoming, inclusive, equitable and socially just community.  In my view, *the Commission is committed to opposing Trump's immigration policies and addressing these issues in the immediate future is a priority.*

> While the proposed interim regulations seek to reconcile the city's social justice policies with the land use code, there is a distinct split in the Commission's view about *the legality and appropriateness of the city's use of our land use regulatory authority to potentially address these types of broad-reaching, politically charged, and largely national-level issues.*

*Id.* (emphasis added).

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF — 9
4815-0372-4614v.14 0088835-000005

Davis Wright Tremaine LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101-3045

27.     On April 25, 2017, the City Council held a public hearing on the Interim Ordinance.  The day before, Mr. Thomas D. Homan, Acting Director of ICE, had sent a letter to then-City of Tacoma Mayor Marilyn Strickland expressing ICE's "significant" concerns with restrictions of the Interim Ordinance as related to federal immigration enforcement and responding to the City's various concerns regarding the operation of NWDC, including the humane treatment of and due process afforded to detainees.  Once again, City Council discussion focused primarily on its desire to limit NWDC's ability to expand due to the facility's role in the federal government's implementation of national immigration policy.

28.     On May 9, 2017, following public hearings required under the City's emergency ordinance provisions, the City Council adopted Ordinance No. 28429, which modified the terms of the Interim Ordinance and further extended its duration for one year.  The adopted modifications to the Interim Ordinance eliminated the separate definition for "private" correctional facilities and removed the prohibition on private correctional facilities in all zoning districts.  As modified, the ordinance would permit future expansions to NWDC through a conditional use permit (CUP) process, with enhanced notice and review for modifications that would increase detainee capacity.  Shortly after the City's adoption of the modified Interim Ordinance, GEO voluntarily dismissed its Petition for Review with the Growth Management Hearings Board without waiving its rights to object to and oppose any future City action relating to NWDC.

29.     In late 2017 and early 2018, the Planning Commission reconvened to discuss and review the staff-prepared draft of proposed permanent regulations concerning correctional and detention facilities to replace the modified Interim Ordinance.  Contrary to the modified Interim Ordinance and all prior discussions of the matter, the Planning Commission's recommendation for permanent regulations abruptly recharacterized NWDC's use as

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF — 10
4815-0372-4614v.14 0088835-000005

Davis Wright Tremaine LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101-3045

"temporary or permanent housing" that it deemed "not appropriate" in the Port/Tideflats Manufacturing/Industrial Center area in which NWDC is located.   The Commission then concluded that if a "residential-like" use is to be allowed in an industrial zone, it should be limited to the M-1 (Light Industrial) zoning district.   Based on this new characterization of NWDC, the Planning Commission recommended that the permanent regulations: (1) distinguish between "correctional" and "detention" facilities; (2) prohibit siting of either type of facility in R-4-L, M-2, or PMI Districts, but allow the siting in R-4 (Multi-family), R-5 (Multi-family), and M-1 (Light Industrial) Districts through a conditional use permitting process; and (3) and extend public notice requirements.

30.     On February 6, 2018, the City Council conducted a public hearing on the permanent regulations as recommended by the Planning Commission.   GEO continued its active participation throughout the City's process—including its submission of a letter dated February 5, 2018 pointing out that "GEO has operated in Tacoma for more than 13 years under both Democratic and Republican Presidential Administrations and has a longstanding record [of] providing high quality, culturally responsive services in a safe, secure, and humane environment that meets the needs of the residents in the custody and care of federal immigration authorities," and that "[s]pecial heightened local regulatory controls over an immigration processing center in Tacoma will not stop or change federal immigration policies." GEO also reiterated concerns regarding the City's authority to impose restrictions on a federal immigration facility, as well as the City's attempt to preclude a recognized essential public facility that the City actively sought when ICE initially sited the facility in Tacoma on the exact parcel its presently occupies.

31.     Nevertheless, discussion of the ordinance continued to focus on federal immigration policy, with Councilmember Beale (former Chair of the Planning Commission)

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF — 11
4815-0372-4614v.14 0088835-000005

Davis Wright Tremaine LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101-3045

commenting that "[w]e do not feel [NWDC] fits within the moral compass of the City and that the majority of the comments I recall hearing is that we would like that eventually removed and the limits on that tightened in terms of expansion abilities."

32.     On February 20, 2018, the City Council held its final reading of the Subject Ordinance, which was ultimately adopted as City Council Amended Ordinance No. 28491.

## The Subject Ordinance Renders NWDC an Unpermitted Use under the City Code

33.     The City Council's review of the Planning Commission's recommendations culminated in the adoption of the Subject Ordinance, after several amendments were proposed and discussed.  The Subject Ordinance, as adopted, restricts the current and future use of the NWDC in several ways: creates a new definition of "detention facility," which applies to the NWDC's current use; prohibits correctional and detention facilities in the Port Maritime & Industrial (PMI) District, Heavy Industrial (M-2) District, and all residential and commercial zones; and permits correctional and detention facilities only in the City's Light Industrial zoning district (M-1) through a discretionary CUP.

34.     The Subject Ordinance thus renders NWDC, newly defined as a "detention facility," a legal nonconforming use within its current PMI zoning district.  The Subject Ordinance further provides that expansions to facilities to "increase the inmate/detainee capacity" will be processed as "major modifications" under the City Code.  The existing Code requires any "major modification" be "processed in the same manner and be subject to the same decision criteria that are currently required for the type of permit being modified."  *See* TMC 13.05.080.C.1.  While this provision could theoretically permit a detention facility to expand through a CUP process, the Subject Ordinance forecloses this possibility for NWDC, expressly stating that a CUP is available only for detention facilities that were zoned M-1 as of January 1, 2018.  This same provision also

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF — 12
4815-0372-4614v.14 0088835-000005

Davis Wright Tremaine LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101-3045

appears to foreclose the possibility of the City issuing a CUP for any other kind of expansion to NWDC.

35.     The Subject Ordinance not only makes NWDC a nonconforming use, it intentionally and specifically precludes it from ever becoming conforming in its current location by limiting detention facilities to the M-1 zoning district as it existed as of January 1, 2018. Notably, this rezone restriction does not apply to correctional facilities such as prisons, which have land use impacts that are equal to—if not greater than—detention facilities like NWDC.  The Subject Ordinance thus imposes stricter regulations on NWDC than it does on prisons, whether publicly- or privately-operated.

36.     GEO is aggrieved and adversely affected by the City's adoption of the Subject Ordinance because, as a private detention facility within the City's PMI District, the ordinance renders NWDC a nonconforming use, strictly limiting and burdening its present ability to expand and subjecting it to City Code provisions favoring phasing out or amortization of nonconforming uses, thereby causing GEO immediate, continuing, and lasting harm, and potentially interfering with its contractual obligations to the federal government to provide a public service in support of the federal government's critical functions at NWDC.

37.     While City staff and officials may not agree with the federal government's current implementation of immigration policies, its attempt to disrupt these critical federal functions through land use regulations is beyond the City's land use regulatory authority.  The City's specific targeting of GEO, a private federal contractor operating the State's only dedicated immigration detention facility, with the Subject Ordinance, and the City's attempts to compromise GEO's performance under its federal contract with ICE, are likewise unlawful.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF — 13
4815-0372-4614v.14 0088835-000005

Davis Wright Tremaine LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101-3045

1

**CLAIM I: PREEMPTION UNDER THE SUPREMACY CLAUSE OF THE CONSTITUTION**

2      38.     GEO incorporates paragraphs 1-37, and the City's administrative record in this

3    matter, as if fully set forth herein.

4      39.     The Supremacy Clause of the United States Constitution provides that the

5    Constitution and the laws of the United States "shall be the supreme Law of the Land."  U.S.

6    Const. art. VI, cl. 2.

7      40.     Under the Supremacy Clause, a state or local law that is preempted by federal

8    law is invalid and lacks any legal force.  A state or local law may be preempted when a

9    provision of federal law expressly preempts a provision of the state or local law.  State or local

10   law is preempted where the scheme of federal regulation is so pervasive as to make reasonable

11   the inference that Congress left no room for the States to supplement it or where state or local

12   law stands as an obstacle to the accomplishment and execution of the full purposes and

13   objectives of Congress.

14     41.     The power to regulate immigration is unquestionably exclusively a federal

15   power.  The federal government's authority includes "the administration and enforcement of all

16   laws relating to the immigration and naturalization of aliens" including all detention and

17   removal programs.  8 U.S.C. §§ 1103, 1231; 6 U.S.C. §§ 202, 251.  Congress explicitly

18   mandates that DHS "shall arrange for appropriate places of detention for aliens detained

19   pending removal or a decision on removal."  8 U.S.C. § 1231(g)(1).

20     42.     The Subject Ordinance is preempted by federal law to the extent it prohibits or

21   hinders the future use or expansion of NWDC.  It is also preempted by federal law to the extent

22   it effectively prohibits federal immigration detention centers in the City.  Notably, the Subject

23   Ordinance also defines "detention facility" such that it seems to apply only to federal

24   immigration detention facilities, and no other uses.[2]

25
_____

26   [2] Oddly, the Subject Ordinance appears to have completely banned jails, whether public or private.  The updated
     definition of "correctional facility" includes only facilities used "primarily for the purposes of punishment,
     correction, or rehabilitation following conviction of a criminal offense," which excludes jails, including the Pierce

27   County Jail, that house mostly pre-trial defendants.  Likewise, the newly-defined category of "detention facilities"
     is limited to those "in which persons are held and housed in custody under process of law, pending the outcome of

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF — 14
4815-0372-4614v.14 0088835-000005

Davis Wright Tremaine LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101-3045

43.     The Subject Ordinance, by regulating federal immigration detention facilities, even those under direct federal control, has legislated in a field occupied by federal law and created conflicts with and obstacles to carrying out federal law by interfering with the means by which DHS and ICE meet their statutory mandate to provide appropriate places of detention for federal detainees.

44.     GEO, as a party contractually required to assist the federal government in its implementation of these mandates, is immune to local regulations like the Subject Ordinance, and is entitled to a declaration under 28 U.S.C. § 2201 proclaiming the Subject Ordinance invalid and unenforceable because it violates the Supremacy Clause of the United States Constitution.

**CLAIM II: VIOLATION OF DUE PROCESS UNDER THE FOURTEENTH AMENDMENT OF THE CONSTITUTION, PURSUANT TO 42 U.S.C. § 1983**

45.     GEO incorporates paragraphs 1-44, and the City's administrative record in this matter, as if fully set forth herein.

46.     The Fourteenth Amendment to the United States Constitution prohibits states from depriving any person of life, liberty, or property, without due process of law.

47.     GEO has a protected and cognizable property interest in ownership, use and development of its property and the performance of its contract with ICE, including continued use of its property as a federal immigration detention facility.  The City's effective ban on federal detention facilities, and its specific ban on detention facilities in the PMI zone where NWDC, the State's only dedicated immigration detention facility, is located, unreasonably interferes with GEO's property interest by making its current use of the property a non-conforming use, thereby severely limiting and burdening GEO's right to make improvements to or to expand its facilities, even if such improvements or expansions were required by ICE.

---

legal proceedings, ***but not*** for the purposes of punishment, correction, or rehabilitation following conviction of a criminal offense." (emphasis added).  Because jails do house inmates serving sentences of less than one year, albeit comprising the minority of their populations, jails are also excluded from the definition of "detention facility," leaving them orphaned under the Subject Ordinance.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF — 15
4815-0372-4614v.14 0088835-000005

Davis Wright Tremaine LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101-3045

48.     The City's ban on federal detention facilities does not further and is unrelated to the stated purposes the Subject Ordinance, which are purportedly to address potential land use and environmental impacts and compatibility issues with siting correctional and detention facilities.  The features associated with the M-1 zoning district—the only zone where correctional and detention facilities are permitted under the Subject Ordinance—are not materially distinct from the PMI zone where the NWDC is presently located.  It is in the same general location as the PMI zone, but closer to the freeway in the tideflats.  The City failed to consider, let alone justify, why it would allow correctional and detention facilities only in the M-1 "Light Industrial" zone, but prohibit these uses in zones that were intended and used for higher-impact and industrial uses.  This indicates that the City's real purpose in enacting the Subject Ordinance was to specifically target GEO's use of NWDC—apparently based on the City's political disagreement with and animus toward current federal immigration policy.

49.     The City's complete prohibition of federal detention facilities except in a very limited area (*i.e.,* the M-1 zone, where the siting of a facility like NWDC is a practical impossibility) demonstrates the City's animosity towards current federal immigration policy and GEO as the federal contractor operating the only federal immigration detention facility in Washington, as well as its arbitrary treatment of these facilities in the Subject Ordinance.  The Subject Ordinance thus lacks any substantial relation to the public health, safety or general welfare and is so arbitrary and irrational as to constitute a violation of GEO's substantive due process rights under the Fourteenth Amendment and 42 U.S.C. § 1983.

**CLAIM III: VIOLATION OF DUE PROCESS UNDER ARTICLE 1, SECTION 3 OF THE WASHINGTON CONSTITUTION, PURSUANT TO 28 U.S.C. § 2201**

50.     GEO incorporates paragraphs 1-49, and the City's administrative record in this matter, as if fully set forth herein.

51.     Article 1, section 3 of the Washington Constitution prohibits the state from depriving any person of life, liberty or property, without due process of law.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF — 16
4815-0372-4614v.14 0088835-000005

Davis Wright Tremaine LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101-3045

52.     GEO has a protected and cognizable property interest in ownership, use and development of its property and the performance of its contract with ICE, including use of the GEO Property as a federal immigration detention facility.  The City's effective ban on detention facilities, and its specific ban on detention facilities in the PMI zone where NWDC is located, unreasonably interferes with GEO's property interest by making its current use of the property a non-conforming use, thereby severely limiting and burdening GEO's right to make any necessary improvements to or to expand its facilities, even if such improvements or expansions were required by ICE.

53.     As noted above, the City's ban on private correctional and detention facilities does not further and is unrelated to the stated purposes the Subject Ordinance, which are purportedly to address potential land use and environmental impacts and compatibility issues with siting correctional and detention facilities.  Instead, its purpose is to ban federal immigration detention facilities such as NWDC based on the City's political disagreement with and animosity toward current federal immigration policy and GEO as a private federal facility contractor.  In this respect, the Subject Ordinance is not aimed at achieving a legitimate public purpose and thus constitutes a violation of GEO's substantive due process rights under the Washington Constitution.

54.     The City's complete prohibition of detention facilities except in a very limited area (*i.e.,* the M-1 zone, where the siting of a facility like NWDC is a practical impossibility) demonstrates the City's animosity towards current federal immigration policy and GEO as the federal contractor operating the only federal immigration detention facility in Washington, as well as its arbitrary treatment of these facilities in the Subject Ordinance.  The Subject Ordinance thus lacks any substantial relation to the public health, safety or general welfare, is unduly oppressive to the owner of the affected land, and is so arbitrary and irrational as to constitute a violation of GEO's substantive due process rights under the Washington Constitution.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF — 17
4815-0372-4614v.14 0088835-000005

Davis Wright Tremaine LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101-3045

## CLAIM IV: VIOLATION OF EQUAL PROTECTION UNDER THE FOURTEENTH AMENDMENT OF THE CONSTITUTION, PURSUANT TO 42 U.S.C. § 1983

55.     GEO incorporates paragraphs 1-54, and the City's administrative record in this matter, as if fully set forth herein.

56.     By targeting GEO's operations, apparently due solely to GEO's status as a federal contractor that provides for the detention of individuals who are not citizens, the Subject Ordinance violates GEO's equal protection rights as guaranteed by the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

57.     The City further lacked any evidence, and thus lacks any rational basis for subjecting detention facilities to stricter regulations than correctional facilities (such as prisons) under the Subject Ordinance.

58.     The Subject Ordinance unlawfully treats these facilities differently by making a future rezone (to M-1) impossible for detention facilities like NWDC, while permitting it for correctional facilities, which have land use impacts that are the same or greater than detention facilities.  Based on the definitions included in the Subject Ordinance, correctional facilities will house only convicted felons, while detention facilities (like NWDC) will generally house civil detainees such as undocumented immigrants, and may simply be awaiting the result of their hearing (e.g. for asylum) so that they may be released.  There was no basis for the City to conclude that a detention facility would have greater public health or safety impacts than a correctional facility, especially considering the fact that both facility types must comply with similar federal standards.  The City has not, and cannot, articulate or demonstrate a rational basis for treating these similarly-situated facilities differently based solely on whether they provide detention or corrections services.

59.     Indeed, the City's disparate treatment of detention and correctional facilities in the Subject Ordinance apparently rests solely on the City's animosity toward and opposition to federal immigration detention facilities and its political disagreement with and animosity toward current federal immigration policy, and not on any legitimate land use or zoning

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF — 18
4815-0372-4614v.14 0088835-000005

Davis Wright Tremaine LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101-3045

considerations or issues.  The fact that the Subject Ordinance singled out "detention facilities," defined such that it seems to apply only to federal immigration detention facilities and no other uses, demonstrates this animus toward the federal government and its private contractors. Decisions based on animus and negative feelings in the community likewise violate equal protection.  Because the City's differential treatment of NWDC and GEO rests on grounds wholly irrelevant to the achievement of any legitimate government objective, it lacks any rational basis for treating detention and correctional facilities differently and constitutes a violation of GEO's equal protection rights under the Fourteenth Amendment and 42 U.S.C. § 1983.

**CLAIM V: VIOLATION OF EQUAL PROTECTION UNDER ARTICLE 1, SECTION 12 OF THE WASHINGTON CONSTITUTION, PURSUANT TO 28 U.S.C. § 2201**

60.     GEO incorporates paragraphs 1-59, and the City's administrative record in this matter, as if fully set forth herein.

61.     By targeting GEO's operations, apparently based solely on GEO's status as a federal contractor that provides for the detention of individuals who are not citizens, the Subject Ordinance violates GEO's equal protection rights as guaranteed by Article 1, section 12 of the Washington Constitution.

62.     The City further lacked any evidence, and thus lacks any rational basis for subjecting detention facilities to stricter regulations than correctional facilities (such as prisons) under the Subject Ordinance.

63.     The Subject Ordinance unlawfully treats these facilities differently by making a future rezone (to M-1) impossible for detention facilities like NWDC, while permitting it for correctional facilities, which have land use impacts that are the same or greater than detention facilities.  Based on the definitions included in the Subject Ordinance, correctional facilities will house only convicted felons, while detention facilities (like NWDC) will generally house civil detainees such as undocumented immigrants, and may simply be awaiting the result of their hearing (e.g. for asylum) so that they may be released.  There was no basis for the City to

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF — 19
4815-0372-4614v.14 0088835-000005

Davis Wright Tremaine LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101-3045

conclude that a detention facility would have greater public health or safety impacts than a correctional facility, especially considering the fact that both facility types must comply with similar federal standards.  The City has not, and cannot, articulate or demonstrate a rational basis for treating these similarly-situated facilities differently based solely on whether they provide detention or corrections services.

64.     The City's disparate treatment of detention and correctional facilities in the Subject Ordinance apparently rests solely on the City's animosity toward and opposition to federal immigration detention facilities and its political disagreement with and animosity toward current federal immigration policy, and not on any legitimate land use or zoning considerations or issues.  The fact that the Subject Ordinance singled out "detention facilities," defined such that it seems to apply only to federal immigration detention facilities and no other uses, demonstrates this animus toward the federal government and its private contractors. Decisions based on animus and negative feelings in the community likewise violate equal protection.  Because the City's differential treatment of NWDC and GEO rests on grounds wholly irrelevant to the achievement of any legitimate government objective, it lacks any rational basis for treating detention and correctional facilities differently and constitutes a violation of GEO's equal protection rights under the Washington Constitution.

**CLAIM VI: DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201**

65.     GEO incorporates paragraphs 1-64, and the City's administrative record in this matter, as if fully set forth herein.

66.     This case presents an actual case or controversy between GEO and the City concerning the validity, applicability, and/or enforceability of the Subject Ordinance.

67.     Because the Subject Ordinance violates and is preempted by the Supremacy Clause and violates GEO's substantive due process and equal protection rights under the Fourteenth Amendment of the United States Constitution, and Article 1, sections 3 and 12 of the Washington Constitution, GEO asks for a declaration pursuant to 28 U.S.C. § 2201 that the Subject Ordinance is invalid and inapplicable both to GEO and NWDC.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF — 20
4815-0372-4614v.14 0088835-000005

Davis Wright Tremaine LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101-3045

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff The GEO Group, Inc., respectfully requests that the Court:

1.      Declare that Ordinance 28491 violates the Supremacy Clause and Fourteenth Amendment of United States Constitution, and Article 1 sections 3 and 12 of the Washington Constitution, and is invalid in whole or in part;

2.      Preliminarily and permanently enjoin the City and its respective officers, agents, employees and attorneys from taking any action to apply or enforce Ordinance 28491;

3.      Award GEO its reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988, and compensatory damages pursuant to 42 U.S.C. § 1983;

4.      Award GEO such other and further relief as the Court deems just and proper.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF — 21
4815-0372-4614v.14 0088835-000005

Davis Wright Tremaine LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101-3045

DATED this 22nd day of March, 2018.

DAVIS WRIGHT TREMAINE LLP

By s/Clayton P. Graham
    Clayton P. Graham, WSBA # 38266
    1201 Third Avenue, Suite 2200
    Seattle, WA  98101-3045
    Telephone: 206.757.8052
    Fax: 206.757.7052
    E-mail:  claytongraham@dwt.com

By s/Charles E. Maduell
    Charles E. Maduell, WSBA #15491
    777 108th Avenue NE, Suite 2300
    Bellevue, WA  98004-5149
    Telephone:  425.646.6100
    Fax:  425.646.6199
    E-mail:  chuckmaduell@dwt.com

By s/Ashley Vulin
    Ashley Vulin, WSBA #45466
    1300 SW Fifth Avenue, Suite 2300
    Portland, OR  97201-5630
    Telephone:  503.241.2300
    Fax: 503.778.5299
    Email:  ashleyvulin@dwt.com

and;

III Branches Law, PLLC

By s/Joan K. Mell
    Joan K. Mell, WSBA #21319
    1019 Regents Blvd. Ste. 204
    Fircrest, WA 98466
    Telephone: 253-566-2510
    E-Mail: joan@3brancheslaw.com

Attorneys for The GEO Group, Inc.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF — 22
4815-0372-4614v.14 0088835-000005