UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| THE GEO GROUP INC,<br><br>               Plaintiff,<br><br>   v.<br><br>CITY OF TACOMA,<br><br>               Defendant. | CASE NO. C18-5233RBL<br><br>ORDER |

THIS MATTER is before the court on Defendant City of Tacoma's Motion for Partial Summary Judgment on Damages [Dkt. # 37], and on Plaintiff GEO Group's Motion to Amend its Complaint [Dkt. # 43].

GEO owns and operates the Northwest Detention Center (NWDC), a 120,000 square foot private detention facility on the Tacoma tide flats. It does so under a contract with the United States Immigration and Customs Enforcement agency (ICE). NWDC opened in 2004. When it was built, the NWDC was permitted outright under Tacoma's Municipal Zoning Code. The NWDC has been upgraded or expanded several times, most recently in 2011.

In 2017 the Tacoma City Council passed an Interim Emergency Ordinance "banning" (GEO's characterization) private correctional facilities in Tacoma, and permitting public

correctional facilities only with a Conditional Use Permit. The final Ordinance was adopted in February 2018.

A month later, GEO sued, arguing that the politically-motivated zoning law change was unconstitutional. It asserted 1983 claims (Supremacy Clause and Fourteenth Amendment due process and equal protection), and state constitutional challenges to the Ordinance. It sought a Declaratory Judgment that the Ordinance is invalid, and an injunction on its application to the NWDC. It also sought § 1983 compensatory damages for "diminution of value, loss of business opportunity, loss of profits and goodwill." [Dkt. # 1].

The City claims it has since been seeking discovery into GEO's claimed damages, before GEO moved to bifurcate the liability and damages aspects of the case [Dkt. # 17] and after that motion was denied [Dkt. # 24]. GEO voluntarily withdrew a portion of its damages claim, seeking only compensatory damages incurred "through the permitting and approval procedures the unlawful ordinance requires of GEO." GEO informed the City that it would amend its complaint, and it now seeks to do so. [*See* Dkt. # 43-1]

Meanwhile, GEO's responses to the City's Requests for Admissions do not clarify that it seeks damages related only to increased permitting and development fees caused by the unlawful ordinance; GEO would not admit, for example, that it is not seeking § 1983 damages. Even its proposed[1] amended complaint generally seeks § 1983 compensatory damages, "expressly excluding [*only*] any claim for damages based on interference with any contract between Plaintiff and ICE." [Dkt. # 43-1 at 21]. It is apparent that GEO seeks to keep its damages options open, but it has provided only limited evidence[2] of any actual damages.

---

[1] The City does not oppose amendment, but argues that the new complaint does not remedy the damages issues raised in motion.

[2] GEO claims it has incurred $4,133 in costs and fees engaging contractors and architects to "prepare necessary site studies and complete the comprehensive design work necessary for the required Conditional Use Permit" but it is

1    The City's Motion for partial summary judgment is an effort to pin down the actual

2    compensatory damages that are in play, and exclude those that are not, either because GEO is not

3    claiming them, or because GEO has provided no evidence in support of them. It argues that

4    GEO's new damages theory—that the City's unconstitutional ordinance will increase the cost of

5    obtaining the City's approval for GEO's recently contemplated expansion—is hypothetical. It

6    has asked the Court to require GEO to produce evidence of any damages in advance of trial, like

7    any other evidence, and now seeks a ruling that because there is no evidence of actual damage, it

8    is entitled to summary judgment on GEO's new or remaining damages claim.

9    GEO responds that its damages will be incurred when (and if) it actually takes steps to

10   improve or expand its facility, and argues that its damages will multiply as the project proceeds.

11   The parties stipulated to an extension of various pre-trial deadlines and a continuance of the trial

12   date three months ago. The expert disclosure date is July 10, the discovery deadline is September

13   9, and the trial is six months away. GEO asks the Court to deny the motion or to grant it a new

14   continuance under Fed R. Civ. P. 56(d)(1). It argues that the motion is premature, to which the

15   City aptly responds that perhaps the damages claim is premature.

16   Summary judgment is proper "if the pleadings, the discovery and disclosure materials on

17   file, and any affidavits show that there is no genuine issue as to any material fact and that the

18   movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether

19   an issue of fact exists, the Court must view all evidence in the light most favorable to the

20   nonmoving party and draw all reasonable inferences in that party's favor. *Anderson Liberty*

21   *Lobby, Inc*., 477 U.S. 242, 248-50 (1986) (emphasis added); *Bagdadi v. Nazar*, 84 F.3d 1194,

---

not clear that *all* of the work reflected on the invoices was required only because the zoning changed. Any large construction project would presumably require a contractor, an architect, a site plan, floor plans, drawings and the like, whether a CUP is required or not.

1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323-24.

There is no requirement that the moving party negate elements of the non-movant's case. *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990). Once the moving party has met its burden, the non-movant must then produce concrete evidence, without merely relying on allegations in the pleadings, that there remain genuine factual issues. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The City argues that GEO is expressly relying on its allegations, and not evidence, in support of its plausible, but so far unsupported, claim that the zoning change will make any expansion more expensive. GEO responds by citing a trio of cases that it claims demonstrate that such increased costs are recoverable under § 1983: *Maytown Sand and Gravel, LLC v. Thurston County*, 423 P.3d 223 (Wash. 2018); *Pacific Shores Properties, LLC v. City of Newport Beach,* 730 F.3d 1142 (9th Cir. 2013); and *Bryan v City of Lakewood*, 259 F.3d 996 (9th Cir. 2000).

But none of these cases support GEO's claim that one who might someday be damaged by an unconstitutional zoning or permitting law can survive a pending summary judgment by relying only on the possibility of future damages. GEO claims that *Maytown* stands for the proposition that damages are available for forced compliance with an improper land use process. But the Washington Supreme Court held in *Maytown* that pre-litigation attorney fees incurred in the administrative land use process were *not* available as damages in a tortious interference case. 423 P.3d at 249. It did not hold that a plaintiff's ability to foresee added expenses if it decides to act in the future are currently recoverable, under § 1983 or any other theory.

GEO cites *Clark* for the proposition that lost revenue is recoverable when it is caused by compliance with an unconstitutional ordinance. But the plaintiff adult cabaret owner there demonstrated that his gross biweekly revenue decreased from $3814 before the ordinance, to $1725 after he was forced to comply with it. Unlike GEO, Clark provided actual evidence of actual damage.

*Pacific Shores* is only slightly more helpful. GEO cites it for the proposition that a plaintiff can recover diverted staff time and legal expenses spent complying with (in that case) an ordinance that unlawfully discriminated against the disabled. But Pacific Shores had actually incurred those costs (and had demonstrated that it had done so, in response to the City's Motion for Summary Judgment) at the time the District Court erroneously dismissed its damages claim. *Pacific Shores*, 730 F.3d at 1166-67. Again, GEO has not done that in this case.

The City emphasizes that the GEO's damage claim is theoretically viable, but for the fact it remains wholly theoretical; there is no evidence of any current actual damage.

GEO's alternate request for additional time to "develop" its damages evidence is at first blush the correct response to a "premature" motion for summary judgment. But GEO does not seek time to gather its evidence or to compile it into an expert report; it needs time to actually incur what it claims will be quickly escalating costs associated with expanding its facility under the new zoning ordinance. Implicit in its request is the admission that it has not yet done so. The City amply demonstrates that GEO is many steps from having an actionable permit-based damages claim. GEO's current, *potential* damages claim, flowing from a permit it has not yet applied for, and which is not the subject of any final decision, are not recoverable. *See Kinzli v. City of Santa Cruz,* 818 F.2d 1449, 1454 (9th Cir. 1987).

Furthermore, GEO's primary claim is that the Ordinance is unconstitutional, and its primary claim for relief is a Declaration that the City cannot enforce the Ordinance against GEO (and a permanent injunction against doing so). If GEO prevails on this core claim, it will not have to process any future expansion under the new Ordinance, and it will not ever have to incur the additional costs associated with doing so. Delaying the case again so that GEO can incur and document damages, just to have a viable damage claim at trial, is of no benefit to anyone. It is much more efficient to resolve the Ordinance's constitutionality in the shorter term.

The City's Motion for Summary Judgment [Dkt. # 37] on GEO's § 1983 damages claim is GRANTED and that claim is DISMISSED with prejudice. GEO's Motion to Amend [Dkt. # 43] is Granted, and GEO shall file its proposed amended complaint [Dkt. 43-1], but that new

complaint does not alter the analysis of its damages claim. GEO's alternate Motion for a Continuance under Rule 54(d)(1) is DENIED.

IT IS SO ORDERED.

Dated this 2nd day of July, 2019.

_____
Ronald B. Leighton
United States District Judge

ORDER - 7