The Honorable Ronald B. Leighton

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

THE GEO GROUP, INC.,

               Plaintiff,

    v.

CITY OF TACOMA, a Washington municipal corporation,

               Defendant.

No. 3:18-CV-05233-RBL

**THE GEO GROUP, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**ORAL ARGUMENT REQUESTED**

NOTED FOR HEARING:
FRIDAY, AUGUST 16, 2019

THE GEO GROUP INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT
(No. 3:18-CV-05233-RBL)
4813-4741-0844v.1 0088835-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 5th Avenue, Ste. 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   FACTUAL BACKGROUND ............................................................................... 2

    A.    The NWDC ................................................................................................ 2

    B.    The City Passes Legislation Affecting NWDC Only and Rendering it
an Unpermitted Use. ................................................................................. 3

        1.    *The City targets the NWDC with building restrictions by
passing Interim Emergency Ordinance No. 28417.* ............................ 3

        2.    *The City passes Amended Ordinance No. 28491, which
purports to prohibit any expansion or major modification of
the NWDC.* ............................................................................................. 4

III.  ISSUES ............................................................................................................... 5

IV.   EVIDENCE RELIED UPON ............................................................................. 6

V.    STANDARD OF REVIEW ................................................................................ 6

VI.   ARGUMENT AND AUTHORITY .................................................................... 6

    A.    The NWDC is Immune from the Ordinance. ............................................ 7

        1.    *Intergovernmental immunity applies to federal contractors.* ............ 7

        2.    *The Ordinance is a "direct regulation" on a federal function
and is therefore invalid under the intergovernmental immunity
doctrine.* ............................................................................................... 8

        3.    *The Ordinance improperly discriminates against the NWDC.* .......... 12

    B.    The Ordinance Is Preempted. ................................................................ 12

        1.    *The Ordinance is invalid under the doctrine of Express
Preemption.* .......................................................................................... 13

        2.    *The Ordinance is invalid under the doctrine of Field
Preemption.* .......................................................................................... 15

        3.    *The Ordinance is invalid under the doctrine of Conflict
Preemption.* .......................................................................................... 16

VII.  CONCLUSION ................................................................................................. 17

THE GEO GROUP INC.'S MOTION FOR PARTIAL SUMMARY
JUDGMENT  — i
(No. 3:18-CV-05233-RBL)
4813-4741-0844v.1 0088835-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 5th Avenue, Ste. 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Avramenkov v. I.N.S.*,
  99 F. Supp. 2d 210 (D. Conn. 2000)...............................................................17

*Blackburn v. United States*,
  100 F.3d 1426 (9th Cir. 1996) .........................................................................9

*Boeing Co. v. Movassaghi*,
  768 F.3d 832 (9th Cir. 2014) ................................................................. *passim*

*Celotex Corp. v. Catrett*,
  477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)..................................6

*Comm. of Cent. Am. Refugees v. I.N.S.*,
  795 F.2d 1434 (9th Cir.), amended, 807 F.2d 769 (9th Cir. 1986)..................16

*Crosby v. Nat'l Foreign Trade Council*,
  530 U.S. 363, 120 S. Ct. 2288 (2000) ..............................................................7

*English v. Gen. Elec. Co.*,
  496 U.S. 72, 110 S. Ct. 2270 (1990) ..............................................................13

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*,
  505 U.S. 88, 112 S. Ct. 2374 (1992) .........................................................12, 15

*Gartrell Construction, Inc. v. Aubry*,
  940 F.2d 437 (9th Cir. 1991) ..........................................................................15

*Goodyear Atomic Corp. v. Miller*,
  486 U.S. 174, 108 S.Ct. 1704 (1988) .............................................................6, 8

*In re: Barboza*,
  545 F.3d 702 (9th Cir. 2008) ............................................................................6

*M'Culloch v. State*,
  17 U.S. 316 (1819)............................................................................................6

*Mathis v. Pac. Gas & Elec. Co.*,
  891 F.2d 1429 (9th Cir. 1989) ........................................................................14

*North Dakota v. United States*,
  495 U.S. 423, 110 S.Ct. 1986 (1990) ...............................................................9

THE GEO GROUP INC.'S MOTION FOR PARTIAL SUMMARY
JUDGMENT  — ii
(No. 3:18-CV-05233-RBL)
4813-4741-0844v.1 0088835-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 5th Avenue, Ste. 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*S. Cal. Darts Ass'n v. Zaffina*,
    762 F.3d 921 (9th Cir. 2014) ...................................................................6

*Satterfield v. Simon & Schuster, Inc.*,
    569 F.3d 946 (9th Cir. 2009) .................................................................13

*Sinclair v. Atty. Gen. of U.S.*,
    198 F. App'x 218 (3d Cir. 2006) ...........................................................16

*Toll v. Moreno*,
    458 U.S. 1, 102 S. Ct. 2977 (1982) .......................................................15

*Travers v. Sullivan*,
    791 F. Supp. 1471 (E.D. Wash. 1992), *aff'd sub nom. Travers v. Shalala*,
    20 F.3d 993 (9th Cir. 1994) .....................................................................6

*Truax v. Raich*,
    239 U.S. 33, 36 S. Ct. 7, 60 L. Ed. 131 (1915)......................................16

*U.S. Postal Service v. City of Hollywood*,
    974 F.Supp. 1459 (S.D. Fla. 1997) .........................................................9

*U.S. Postal Service v. Town of Greenwich*,
    901 F.Supp. 500 (D.Conn. 1995)...........................................................14

*United States v. California*,
    921 F.3d 865 (9th Cir. 2019) ..................................................... *passim*

*United States v. City of Pittsburg, Cal.*,
    661 F.2d 783 (9th Cir. 1981) .................................................................16

**State Cases**

*Thanet Corp. v. Bd. of Adjustment*,
    108 N.J. Super. 65, 260 A.2d 1 (N.J. App. Div., 1969)...........................9

**Federal Statutes**

8 U.S.C. Chapter 12, Pub. L. No. 82-414, 66 Stat. 163 (1952)............................16

8 U.S.C. § 1231 .........................................................................................3, 4, 16

8 U.S.C. § 1231(a), (g) ........................................................................................16

8 U.S.C. § 1231(g).......................................................................................14, 16

40 U.S.C. Chapter 33..........................................................................................14

THE GEO GROUP INC.'S MOTION FOR PARTIAL SUMMARY
JUDGMENT — iii
(No. 3:18-CV-05233-RBL)
4813-4741-0844v.1 0088835-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 5ᵗʰ Avenue, Ste. 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

40 U.S.C. § 3301(b) ................................................................................................14

40 U.S.C. § 3312(c) ................................................................................................13

42 U.S.C. § 1988 ...............................................................................................1, 18

**Rules**

Fed. R. Civ. P. 56(a) .................................................................................................6

**Constitutional Provisions**

U.S. Const., Article VI .............................................................................................7

U.S. Const. Article VI, cl. 2 .....................................................................................6

**Other Authorities**

City of Tacoma Fee Schedule, *available at* http://tacomapermits.org/wp-content/uploads/2018/05/Fee-Schedule.pdf (last visited July 24, 2019). ........................11

City of Tacoma "Tip Sheet" Regarding Conditional Use Permit application process and requirements, *available at* http://tacomapermits.org/wp-content/uploads/2014/08/L-640-Conditional-Use-Permit-CUP.pdf (last visited July 24, 2019) ................................................................................................11

February 6, 2018 Public Hearing relating to permanent correctional and detention facility regulations : http://cityoftacoma.granicus.com/MediaPlayer.php?view_id=3&clip_id=2942 (last visited July 24, 2019) ..............................................................................4

https://www.cityoftacoma.org/government/city_departments/planning_and_development_services/planning_services/current_initiatives_and_projects/correctional_and_detention_facilities_regulations (last visited July 24, 2019) ..............................................................................................4

Webster's Third New International Dictionary Unabridged 483 (2002) ..............................13

THE GEO GROUP INC.'S MOTION FOR PARTIAL SUMMARY
JUDGMENT  — iv
(No. 3:18-CV-05233-RBL)
4813-4741-0844v.1 0088835-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 5th Avenue, Ste. 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# I.   INTRODUCTION

The Constitution and laws of Congress are the supreme law of the land. While state and local government fill an important and cherished role in the proper functioning of our society, these authorities cannot impinge on federal law or the United States government's proper execution of functions relegated exclusively to the federal sphere.

The City of Tacoma has sought to unconstitutionally impinge on a matter of exclusive federal jurisdiction – immigration, and specifically the use of federal immigration detention facilities. Plaintiff owns and operates the Northwest Detention Center ("NWDC"), which is under contract with the U.S. government, and for exclusive use by several federal agencies for detention and federal immigration legal proceedings. The NWDC has always been used by the federal government in furtherance of its enforcement of federal immigration law and policy, and has expanded several times to meet federal immigration-related needs. In February 2018, the City passed Ordinance 28491 (the "Ordinance"), which on its face purports to prohibit ***any*** further expansion or major modification of the NWDC, or alternatively to subject the NWDC to a burdensome, time consuming, and discretionary approval process. The Ordinance includes no exception for federal facilities or operations.

In passing the Ordinance, the City violated the Constitution's Supremacy Clause by attempting to directly regulate a federal function and by attempting to legislate a subject matter Congress reserved to the federal government. Plaintiff, a federal contractor, brought suit seeking the Ordinance's invalidation under multiple federal and state constitutional bases. By this motion, Plaintiff respectfully moves for summary judgment on Claim I in its First Amended Complaint, which seeks (1) a declaration that the Ordinance violates the Supremacy Clause of the United States Constitution; (2) an injunction permanently enjoining the City and its agents from taking any action to apply or enforce the Ordinance; and (3) recovery of Plaintiff's reasonable costs and attorneys' fees under 42 U.S.C. § 1988. Because the Ordinance is invalid under the Supremacy Clause, the Court should grant Plaintiff's requested relief.

THE GEO GROUP INC.'S MOTION FOR PARTIAL SUMMARY
JUDGMENT  — 1
(No. 3:18-CV-05233-RBL)
4813-4741-0844v.1 0088835-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 5th Avenue, Ste. 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## II.    FACTUAL BACKGROUND

### A.    The NWDC.

The NWDC is the only dedicated federal immigration detention center active within the State of Washington. Declaration of Amber Martin ("Martin Decl."), ¶ 2. It was designed to safely and humanely accommodate approximately 500 detainees and began operations in 2004. Declaration of Selwin Shakir ("Shakir Decl."), ¶ 2. It has undergone multiple expansions since then, including approximately tripling the maximum detainee capacity. *Id.* Along with detainee housing facilities, the NWDC includes on-site immigration courts, a law library, detainee processing facilities, healthcare facilities, visitor facilities and visitation space, religious accommodations, recreational facilities and resources, a kitchen, laundry, shipping and receiving areas, and administrative and office space for U.S. Department of Justice, U.S. Immigration and Customs Enforcement, and U.S. Department of Homeland Security personnel. *Id.* at ¶ 3; *see also* Martin Decl., ¶ 4, & Ex. A.

The NWDC is operated under contract with the federal government. Martin Decl., ¶ 3, & Ex. A. It is and has always been used exclusively by and on behalf of the federal government. *Id.* The core function of the NWDC is to hold detainees pending federal immigration removal proceedings, and then if removal is ordered, to transfer the detainees to a separate location (such as an airport) for deportation. Shakir Decl., ¶ 3, & Ex. A at 43. Under its contract with the federal government, Plaintiff is responsible for providing detention management services, including the facility itself and personnel to operate the facility. Martin Decl., ¶ 3, & Ex. A at 55-57. Plaintiff is further contractually obligated to comply with federal standards in carrying out its contractual obligations to the federal government. *Id.*, & Ex. A at 57. For example, Plaintiff must stay knowledgeable and informed on a number of specific government handbooks, policies, regulations and orders that it must comply with in carrying out its obligations. *Id.*, & Ex. A at 44.  Likewise, Plaintiff must "provide full and complete cooperation for any request or investigation conducted by [U.S. Immigration and Customs

THE GEO GROUP INC.'S MOTION FOR PARTIAL SUMMARY
JUDGMENT  — 2
(No. 3:18-CV-05233-RBL)
4813-4741-0844v.1 0088835-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 5ᵗʰ Avenue, Ste. 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Enforcement]." *Id.*, & Ex. A at 45. The services Plaintiff provides to the federal government at the NWDC must comply with all valid and applicable laws and regulations. *Id.*, & Ex. A at 52.

**B.     The City Passes Legislation Affecting NWDC Only and Rendering it an Unpermitted Use.**

> ### *1.     The City targets the NWDC with building restrictions by passing Interim Emergency Ordinance No. 28417.*

On March 7, 2017, the City passed Interim Emergency Ordinance No. 28417 (the "Interim Ordinance"). Declaration of Clayton P. Graham ("Graham Decl."), ¶ 2, & Ex. C. The Interim Ordinance referenced "changes in the national political climate" and found that the NWDC was a "federal immigration detention center" and that the "Department of Homeland Security is on record stating its desire to increase and secure additional detention facilities such as the privately owned and operated [NWDC]." *Id.* The Interim Ordinance classified the NWDC as a "private correctional facility" and declared "private correctional facilities as an unpermitted use in all zoning districts," meaning the City prohibited construction (including major modifications and expansions) of any privately owned detention facilities within the City limits, including the location where the NWDC was sited. *Id.* The Interim Ordinance referenced public and private correctional facilities generally but identified no entity or facility by name, other than the NWDC. *Id.* The Interim Ordinance's stated duration was six months. *Id.*

On April 24, 2017, Thomas Homan, Acting Director of ICE, wrote to Tacoma City Mayor Marilyn Strickland, who was also a member of the City Council. Graham Decl., ¶ 3, & Ex. D. He identified the Interim Ordinance and stated that it was "clearly intended to prevent the operation of ICE's Northwest Detention Center." *Id.* He acknowledged that "ICE manages a nationwide immigration detention system" that includes "privately owned and operated" facilities that are "under ICE's oversight and legal authority." *Id.* He further reminded the City that "the detention authority at issue arises under federal immigration law" and identified several federal statutes, including 8 U.S.C. §1231. *Id.* "Tacoma's efforts to alter immigration detention decisions under the guise of a change in zoning policy manifests a lack of

THE GEO GROUP INC.'S MOTION FOR PARTIAL SUMMARY
JUDGMENT  — 3
(No. 3:18-CV-05233-RBL)
4813-4741-0844v.1 0088835-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 5ᵗʰ Avenue, Ste. 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1    appreciation – or understanding – for ICE's role." *Id.*

2          Two weeks later, the City passed Modified Interim Emergency Ordinance No. 28429.

3    Graham Decl., ¶ 4, & Ex. E. This legislation extended the Interim Ordinance for one year,

4    eliminated the separate definition for "private" correctional facilities, and removed the

5    categorical prohibition on private correctional facilities throughout the City. *Id.* The new

6    interim ordinance also required facilities deemed "correctional" (including the NWDC) to

7    secure a Conditional Use Permit before expanding the number of detainees or undergoing any

8    major modifications. *Id.*

9                    **2.    *The City passes Amended Ordinance No. 28491, which purports to
                              prohibit any expansion or major modification of the NWDC.***

10          On February 6, 2018, the City Council conducted a public hearing on permanent

11   regulations regarding the NWDC. Graham Decl., ¶ 5.[1] At the hearing, City Councilmember

12   Chris Beale stated:

13                    We do not feel [the NWDC] fits within the moral compass of the City and
14                    that the majority of the comments I recall hearing is that we would like
                      that eventually removed and the limits on that tightened in terms of
15                    expansion abilities.

16   *Id.*[2]

17          Two weeks later, on February 20, 2018, the City Council passed Amended Ordinance

18   No. 28491 (the "Ordinance"). TMC 13.05.080; Graham Decl., ¶ 6, & Ex. F. Prior to adopting

19   the Ordinance, the City Council learned that the only facility that would experience an

20   increased burden under the proposed Ordinance would be the NWDC. *Id.* at ¶ 7, & Ex. G at ¶¶

21   14-17 (January 17, 2018 Findings of Fact and Recommendations Report from Tacoma

22   Planning Commission).[3]

23   ───────────────────────

24   [1] *See* February 6, 2018 Public Hearing relating to permanent correctional and detention facility regulations (via
     video archive), located at the following municipal link:
     http://cityoftacoma.granicus.com/MediaPlayer.php?view_id=3&clip_id=2942 (last visited July 24, 2019).

25   [2] *Id.* at 47:53.
     [3] The City Council adopted the Ordinance based on the Planning Commission's January 17, 2018 report, as stated
26   in the municipal link:
     https://www.cityoftacoma.org/government/city_departments/planning_and_development_services/planning_servic
27   es/current_initiatives_and_projects/correctional_and_detention_facilities_regulations (last visited July 24, 2019).

THE GEO GROUP INC.'S MOTION FOR PARTIAL SUMMARY
JUDGMENT  — 4
(No. 3:18-CV-05233-RBL)
4813-4741-0844v.1 0088835-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 5ᵗʰ Avenue, Ste. 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

The Ordinance recounts that the purposes of the two prior interim ordinances was to "prohibit or require conditional use permits for new or expanded correctional facilities." Graham Decl., ¶ 6, & Ex. F. The Ordinance then distinguished detention and correctional facilities and declared detention facilities to be prohibited in all zones except "M-1" (light industrial) zones. *Id.* Detention facilities in M-1 zones could undergo major modifications or expansions that increase the detainee capacity if they secured a Conditional Use Permit, but only if such facilities existed in an M-1 zone as of January 1, 2018, the month before the City passed the Ordinance. *Id.* The NWDC was in the Port Maritime & Industrial zone and not zoned M-1 on, and prior to, January 1, 2018. City's Answer to Complaint, ¶ 15 (Dkt. No. 10 at 3); Shakir Decl., ¶ 4.

### III.   ISSUES

Is the Ordinance invalid under the Supremacy Clause? Specifically:

1.     Is the Ordinance invalid under the doctrine of intergovernmental immunity, where the Ordinance attempts to directly regulate a federal contactor's operation of a federal function and treats immigration facilities differently than non-immigration correctional facilities?

2.     Does federal law expressly preempt the Ordinance, where Congress has declared that local zoning laws need not even be considered in the context of immigration detention centers?

3     Does federal law implicitly preempt the Ordinance, where Congress has occupied the field regarding the admission of aliens into the country, including with regard to detention centers and deportation proceedings?

4.     Does federal law implicitly preempt the Ordinance, where the Ordinance creates obstacles to the use of immigration detention centers as contemplated by federal law?

If the answer to any of the above questions is "yes," the Ordinance is invalid and the Court should grant Plaintiff's Motion for Summary Judgment.

THE GEO GROUP INC.'S MOTION FOR PARTIAL SUMMARY
JUDGMENT  — 5
(No. 3:18-CV-05233-RBL)
4813-4741-0844v.1 0088835-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 5th Avenue, Ste. 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## IV.    EVIDENCE RELIED UPON

Plaintiff relies on the pleadings and papers on file in this matter, and the supporting declarations of Amber Martin, Selwyn Shakir, and Clayton Graham, and the exhibits attached to those declarations.

## V.    STANDARD OF REVIEW

Summary judgment is appropriate where there is "no genuine issue as to any material fact" and the moving party "is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party makes this showing, the "nonmoving party must set forth specific facts showing a genuine issue for trial" and cannot rest on mere allegations. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Travers v. Sullivan*, 791 F. Supp. 1471, 1475 (E.D. Wash. 1992), *aff'd sub nom. Travers v. Shalala*, 20 F.3d 993 (9th Cir. 1994) (internal quotations omitted). A genuine issue of fact exists only if there is sufficient evidence on which a reasonable trier of fact could find for the nonmoving party. *In re: Barboza*, 545 F.3d 702, 707 (9th Cir. 2008). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925 (9th Cir. 2014).

## VI.    ARGUMENT AND AUTHORITY

The Supremacy Clause of the United States Constitution states:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof…shall be the supreme Law of the Land…any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. art. VI, cl. 2. Because the Constitution and laws of the United States are the supreme law of the land, the federal government is immune under the ***intergovernmental immunity*** doctrine from any state or local law that attempts to directly or discriminatorily regulate the federal government or the execution of federal functions. *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 180, 108 S.Ct. 1704, 1709 (1988); *M'Culloch v. State*, 17 U.S. 316, 317 (1819). This immunity extends to federal functions carried out by private contractors. *Boeing*

THE GEO GROUP INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT  — 6
(No. 3:18-CV-05233-RBL)
4813-4741-0844v.1 0088835-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 5th Avenue, Ste. 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Co. v. Movassaghi*, 768 F.3d 832, 836 (9th Cir. 2014) (state law affecting private contractor carrying out federal function invalid under intergovernmental immunity doctrine).

The Supremacy Clause further dictates that federal law controls over state and local law. Thus, "Congress has the power to preempt state law" through ***express preemption***. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372, 120 S. Ct. 2288, 2293 (2000). Further, even without an express provision reflecting Congress's intent to preempt state or local law, state and local laws "must yield" to Congress where "Congress intends federal law to 'occupy the field'" or "to the extent of any conflict with a federal statute" through ***implied preemption***. *Id.* (internal citations omitted).

Here, the Ordinance attempts to regulate any expansion or major modification of a federal immigration detention facility – a facility which is used solely to execute federal immigration law – in contradiction of federal law. Under the Supremacy Clause's intergovernmental immunity and preemption doctrines, any application of the Ordinance to the NWDC is therefore invalid.

**A.      The NWDC is Immune from the Ordinance.**

"The doctrine of intergovernmental immunity is derived from the Supremacy Clause, U.S. Const., art. VI, which mandates that the activities of the Federal Government are free from regulation by any state. . . .Accordingly, state laws are invalid if they regulate the United States directly or discriminate against the Federal Government or those with whom it deals." *United States v. California*, 921 F.3d 865, 878 (9th Cir. 2019) (quoting *Boeing*, 768 F.3d at 839) (internal punctuation and additional citations omitted). Intergovernmental immunity comes in two forms – direct regulation and discrimination. *Boeing*, 768 F.3d at 839. Here, the City has attempted to directly regulate any expansion or major modification of a federal immigration detention center. It has also discriminated against such facilities. The Ordinance is therefore invalid under the intergovernmental immunity doctrine.

*1.      Intergovernmental immunity applies to federal contractors.*

THE GEO GROUP INC.'S MOTION FOR PARTIAL SUMMARY
JUDGMENT  — 7
(No. 3:18-CV-05233-RBL)
4813-4741-0844v.1 0088835-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 5ᵗʰ Avenue, Ste. 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

As a threshold matter, "[f]or purposes of intergovernmental immunity, federal contractors are treated the same as the federal government itself." *California*, 921 F.3d at 882, n. 7. *See also Goodyear Atomic Corp. v. Miller,* 486 U.S. 174, 181, 108 S.Ct. 1704, 1710 (1988) (applying Supremacy Clause protections to the performance of a federal function, "even though the federal function is carried out by a private contractor"). This is true regardless of whether the federal government or a private contractor owns the facility where the federal function is being performed. For example, in *Boeing*, the U.S. Department of Energy hired a private contractor for environmental cleanup work of property owned by the private contractor, where the environmental hazards were due to nuclear research and rocket testing work the private contractor did with the DOE, NASA, and the United States Air Force over a period of several decades (the private contractor also operated a commercial nuclear reactor on the premises separate from its work with the DOE and NASA). California, unsatisfied with the cleanup efforts, enacted legislation prescribing cleanup standards applicable to the private contractor site. *Boeing*, 768 F.3d at 835-37. The private contractor sued, and the Ninth Circuit affirmed that the California law was invalid against the private contractor under the intergovernmental immunity standard. *Id*. at 839.

Plaintiff owns the NWDC, but the facility is used exclusively to carry out federal functions by federal personnel and Plaintiff employees who are contractually subject to federal standards and procedures. *See*, *e.g.*, Martin Decl., ¶ 3, & Ex. A at 44. The intergovernmental immunity doctrine therefore applies to Plaintiff and its operations at the NWDC.

### 2. *The Ordinance is a "direct regulation" on a federal function and is therefore invalid under the intergovernmental immunity doctrine.*

"Direct regulation" occurs when a state or local government interferes with federal functions by mandating that the federal government (or its contractor) comply with prescribed procedures or standards. The state or local regulation need not specifically target a federal actor or activity, but instead must merely include the federal government within its scope. Thus, for example, the National Parks Service was immune from a state law mandating warning signs

and other safety features associated with waterways. *Blackburn v. United States*, 100 F.3d 1426, 1435 (9th Cir. 1996). The law in question did not single out the National Parks Service or federal parks specifically, but instead spoke generally of "person[s]" who maintain "resort[s]." *Id*. n. 3. Likewise, in *Boeing*, a state law mandating that a private entity abide by certain cleanup standards in discharging its contractual obligations to the U.S. Department of Energy was invalid. 768 F.3d at 840. In contrast, a North Dakota law that required alcohol suppliers to label products that were later sold to the federal government was not invalid under the intergovernmental immunity doctrine because there was "no claim in [that] case, nor could there be, that North Dakota regulates the Federal Government directly." *North Dakota v. United States*, 495 U.S. 423, 436, 110 S.Ct. 1986, 1995 (1990). The law in *North Dakota* applied directly to alcohol sellers, not the federal government or any contractor carrying out the function of the federal government. *See id*.

More relevant to this case, courts have found invalid local zoning and building permit rules that impose requirements on private entities leasing facilities to the federal government. Thus, in *U.S. Postal Service v. City of Hollywood*, the Court held that a local ordinance requiring a specific building permit did not apply to the renovation of a building for future use as a U.S. Post Office, even though the building was owned by a private party and the contract for renovation was between the private owner and a private contractor, because interference with the renovations would directly interfere with a (forthcoming) federal function. 974 F.Supp. 1459, 1460 (S.D. Fla. 1997). *Accord Thanet Corp. v. Bd. of Adjustment*, 108 N.J. Super. 65, 260 A.2d 1 (N.J. App. Div., 1969) (private contractor leasing facility to U.S. Post Office immune from local building permit requirements).

There is no dispute that the NWDC is operated exclusively to carry out core federal immigration functions. Any direct regulation of the NWDC therefore triggers the Supremacy Clause's intergovernmental immunity protections and is invalid. Here, the Ordinance explicitly purports to directly regulate detention facilities, which are defined to include the NWDC.

THE GEO GROUP INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT — 9
(No. 3:18-CV-05233-RBL)
4813-4741-0844v.1 0088835-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 5th Avenue, Ste. 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Moreover, the regulations are neither meaningless nor de minimis.[4] Instead, the Ordinance impedes the NWDC's federal functions in at least two ways.

*First*, the Ordinance categorically prohibits *any* expansion or major modification of the NWDC. The Tacoma Municipal Code, as amended by the Ordinance, prohibits "expansions" and "major modification[s]" to detention centers absent a Conditional Use Permit. TMC 13.06.400.C.5, Use Table, "Detention facility." But the Code restricts Conditional Use Permits to facilities that were zoned as "M-1" as of January 1, 2018. *Id*., "Additional Regulations." The NWDC – which the City understood was the only detention center in Tacoma when the Ordinance passed, *see* Graham Decl. at ¶ 7, Ex. G at ¶¶ 14-17 (identifying the NWDC as the only detention center the Ordinance would effect) – was zoned PMI, not M-1, on January 1, 2018. City's Answer to Complaint, ¶ 15; *see also* Shakir Decl., ¶ 4. The Ordinance thus purports to dictate the scope of federal operations at the NWDC by locking the facility in place as it existed when the City passed the Ordinance and leaving no room for expansion or other facility modifications to meet the federal government's needs.

*Second*, even if the Ordinance did not categorically prohibit NWDC modifications or expansions, it still purports to directly regulate any such activity. Even if one ignores the "M-1 zone" requirement, the Ordinance dictates that the NWDC secure a Conditional Use Permit before any major modifications or expansions may occur. TMC 13.06.400.C.5, Use Table, "Detention facility." Building permits are ministerial in nature and typically issue within weeks. Shakir Decl., ¶ 5. Conditional Use Permits, however, bestow significant discretionary authority on City officials to accept or reject a project and elevate City and local interests above federal policies and functions. Developers seeking a Conditional Use Permit must undergo significant evaluation and design work *that is not required outside of the Conditional Use Permit process*. For example, under the City's current regulations, any Conditional Use Permit

---

[4] Even if the Ordinance's regulations were minimal, the Ordinance is still invalid because there is no "de minimis" exception to intergovernmental immunity. *California*, 921 F.3d at 883.

THE GEO GROUP INC.'S MOTION FOR PARTIAL SUMMARY
JUDGMENT  — 10
(No. 3:18-CV-05233-RBL)
4813-4741-0844v.1 0088835-000005

application must be accompanied by (1) a special application form; (2) a $5,000 fee;[5] (3) building elevations, which must show exterior views of all sides of a proposed structure; (4) any traffic and parking studies, State Environmental Policy Act (SEPA) review, or other environmental compliance documents the City requires at or after the time of submittal to ensure the proposal's compliance with the Conditional Use Permit criteria and other controlling laws.[6] This fee and these steps are ***not*** required in the ministerial permit context. Further, before an entity can secure a Conditional Use Permit to expand a nonconforming use (like the NWDC), it must show "a demonstrated need for the use within the community at large," that the use be consistent with the City's Comprehensive Plan, and that the proposal comport with the subjective requirements for "adequacy of landscaping, screening, yard, setbacks, [and] open spaces," TMC 13.06.640.D.1-5, as well as a demonstration that any revision "will have a positive impact on the surrounding uses and the area overall." TMC 13.06.640.P.2. The NWDC must therefore prove to the City that it satisfies the City's burdensome demands (objective and subjective), rooted in local interests and priorities, before it may take any action to modify the facility to meet federal needs. The Ordinance thus imposes direct regulatory requirements on federal activities.

***Any*** state or local direct regulation of the federal government or a federal contractor is invalid. *See California*, 921 F.3d at 883 (no "de minimis exception to the doctrine of intergovernmental immunity."). Although more is not required for Plaintiff to prevail, the scope of the regulations here further underscore their invalidity. State and local governments "have no power, by taxation or otherwise, *to retard, impede, burden, or in any manner control*" federal operations. *California*, 921 F.3d at 880 (quoting *M'Culloch v. Maryland*, 17 U.S. 316 (1819) (emphasis in original)). By flatly prohibiting any NWDC modification or expansion, or

---

[5] *See* City of Tacoma Fee Schedule, *available at* http://tacomapermits.org/wp-content/uploads/2018/05/Fee-Schedule.pdf (providing for initial $5,000 fee to apply for a conditional use permit) (last visited July 24, 2019).
[6] *See* City of Tacoma "Tip Sheet" Regarding Conditional Use Permit application process and requirements, *available at* http://tacomapermits.org/wp-content/uploads/2014/08/L-640-Conditional-Use-Permit-CUP.pdf (last visited July 24, 2019).

Davis Wright Tremaine LLP
LAW OFFICES
920 5th Avenue, Ste. 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1   alternatively by making such more burdensome, the Ordinance purports to retard, impede,

2   burden, and control the scope of the NWDC's operations. The Ordinance is therefore invalid

3   with regard to the NWDC under the Supremacy Clause intergovernmental immunity doctrine.

4       **3. *The Ordinance improperly discriminates against the NWDC.***

5      Case law recognizes a "discrimination" prohibition in addition to the "direct regulation"

6   prohibition under the intergovernmental immunity doctrine. *Boeing*, 768 F.3d at 839. Although

7   Plaintiff believes the appropriate framework for reviewing the City's actions in this case is the

8   direct regulation analysis, to the extent the Court believes the direct regulation analysis does

9   not apply or invalidate the Ordinance, Plaintiff maintains that the Ordinance is unconstitutional

10   because it "discriminate[s] against the federal government and burden[s] it in some way."

11   *California*, 921 F.3d at 880. As discussed above, the Ordinance burdens the NWDC's ability to

12   expand as necessary and appropriate to execute federal immigration functions. The Ordinance

13   precludes ***any*** expansion for detention centers zoned outside an M-1 district before January 1,

14   2018, but does not extend this prohibition to correctional facilities, which were treated part-

15   and-parcel with detention centers in both interim ordinances that preceded the current

16   Ordinance. There is no dispute that the only detention center in this case is the NWDC, and the

17   NWDC was not zoned M-1 before January 1, 2018. The Ordinance therefore prohibits any

18   expansion of the NWDC but imposes no similar burden on any other existing facility. Under

19   either the direct regulation or discrimination analysis, the Ordinance is invalid under the

20   intergovernmental immunity doctrine.

21   **B. The Ordinance Is Preempted.**

22      "Pre-emption may be either expressed or implied, and is compelled whether Congress'

23   command is explicitly stated in the statute's language or implicitly contained in its structure and

24   purpose." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98, 112 S. Ct. 2374, 2383

25   (internal punctuation omitted) (1992). Implied preemption comes in "at least two types," (1)

26   field preemption and (2) conflict preemption. *Id*. Congress has declared its express intent

27

THE GEO GROUP INC.'S MOTION FOR PARTIAL SUMMARY
JUDGMENT — 12
(No. 3:18-CV-05233-RBL)
4813-4741-0844v.1 0088835-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 5th Avenue, Ste. 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

through legislation that local zoning laws do not apply to federal immigration detention centers. Congress has further relegated the field of the admission of aliens, including with regard to detention facilities and deportation proceedings, to the federal government and left no room for state or local supplementation. Finally, the Ordinance improperly imposes obstacles to the execution of federal policy as set forth by federal statute. For all these independent reasons, the Ordinance is preempted as it relates to the NWDC.

### 1.   *The Ordinance is invalid under the doctrine of Express Preemption.*

"Pre-emption fundamentally is a question of congressional intent," and Congress's intent may be expressed through explicit statutory language. *English v. Gen. Elec. Co.*, 496 U.S. 72, 78–79, 110 S. Ct. 2270, 2275 (1990). Here, the City cannot subject the NWDC to zoning restrictions and the discretionary and burdensome Conditional Use Permit process because Congress has excused immigration detention facilities by statute from complying with state and local zoning laws.

As a threshold matter, federal buildings (including federal detention facilities) need not comply with state or local zoning laws, but must only *consider* them:

> Each building constructed or altered by the Administration or any other federal agency shall be constructed or altered only after *consideration* of all requirements (except procedural requirements) of the following laws of a State or a political subdivision of a State…:
>
> (1) Zoning laws.

40 U.S.C. § 3312(c) (emphasis added). "The preeminent canon of statutory interpretation requires us to presume that [the] legislature says in a statute what it means and means in a statute what it says there. Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) (internal citation omitted). To "consider" means "to reflect on: think about with a degree of care or caution." Webster's Third New International Dictionary Unabridged 483 (2002). Section 3312's unambiguous language therefore requires federal facilities to "think about" zoning laws "with a degree of care or caution," nothing more. By directing mere

THE GEO GROUP INC.'S MOTION FOR PARTIAL SUMMARY
JUDGMENT  — 13
(No. 3:18-CV-05233-RBL)
4813-4741-0844v.1 0088835-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 5ᵗʰ Avenue, Ste. 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

consideration of zoning regulations, Congress made clear its intent that federal facilities need not comply with such regulations.

Even if the City contends that "consider" means something more than "to think about with a degree of care or caution" (it does not), Congress has gone a step further and exempted immigration detention facilities *from even considering* local zoning laws:

> [40 U.S.C. chapter 33] does not apply to the construction of any public building to which section 241(g) of the Immigration and Nationality Act (8 U.S.C. § 1231(g)) … applies."

40 U.S.C. § 3301(b). Congress's command that federal facilities merely "consider" local zoning laws, Section 3312, falls within 40 U.S.C. chapter 33. Thus, if 8 U.S.C. § 1231(g) applies to immigration detention centers, then Congress has expressed its intent that federal immigration detention centers (including the NWDC) need not consider, much less comply with, local zoning ordinances, and the Ordinance's application to the NWDC is preempted.

Section 1231(g), in fact, applies to immigration detention facilities:

> The Attorney General shall arrange for appropriate *places of detention for aliens detained* pending removal or a decision on removal.

8 U.S.C. § 1231(g) (emphasis added). The NWDC is a place of detention for aliens detained pending removal or a decision on removal. Application of local zoning laws to the NWDC is thus preempted.

As with intergovernmental immunity, it is of no moment that the Plaintiff is a private entity contracting its facility to the federal government – for purposes of the Supremacy Clause, federal contractors are treated the same as the federal government itself. *See* Section VI.A.1 above.[7] Thus, *U.S. Postal Service v. Town of Greenwich*, the Court found that a state building code was preempted as it related to third-party defendant private entities that were leasing land to the Postal Service and constructing a post office on that land. 901 F.Supp. 500, 507 (D.Conn. 1995). Preemption of the building code existed with regard to the private entities because

---

[7] Private entities fall within the scope of laws that apply to the federal government in other contexts as well, such as in *Bivens* actions. *E.g. Mathis v. Pac. Gas & Elec. Co.*, 891 F.2d 1429, 1432 (9th Cir. 1989) (private entity liable under the U.S. Constitution where the private entity's actions are attributable to the federal government).

THE GEO GROUP INC.'S MOTION FOR PARTIAL SUMMARY
JUDGMENT  — 14
(No. 3:18-CV-05233-RBL)
4813-4741-0844v.1 0088835-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 5th Avenue, Ste. 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Congress declared that the ***Postal Service*** had the power construct and operate post offices – it did not matter that Congress's act explicitly identified a federal agency only. *Id* (citing  39 U.S.C. § 401(5)). Likewise, the Ninth Circuit in *California* concluded (in the context of intergovernmental immunity) that "federal contractors are treated the same as the federal government itself." 921 F.3d at 882, n. 7. As support for this conclusion, the Ninth Circuit cited *Gartrell Construction, Inc. v. Aubry*, 940 F.2d 437 (9th Cir. 1991), a federal contractor preemption case. *Id*.

Congress explicitly declared that federal facilities need only consider zoning laws, then excused immigration detention centers from that limited requirement. In doing so, Congress expressed its intention that immigration detention centers are not subject to state or local zoning regulations. The Ordinance is a local zoning regulation, and as such, any application to the NWDC (or any other federal immigration detention center) is preempted.

### 2.   *The Ordinance is invalid under the doctrine of Field Preemption.*

Even if Congress had not expressly excused immigration detention centers from compliance with local zoning regulations, such laws are still implicitly preempted under the "field preemption" doctrine "where the scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *Gade*, 505 U.S. at 98 (internal citations omitted). It is settled law that Congress has implicitly reserved the field of immigration, including with regard to detention facilities, to the federal government. Any state or local law, including the Ordinance, purporting to regulate an immigration detention center is therefore invalid under the field preemption doctrine.

The Supreme Court's "cases have long recognized the preeminent role of the Federal Government with respect to the regulation of aliens within our borders." *Toll v. Moreno*, 458 U.S. 1, 10, 102 S. Ct. 2977, 2982 (1982). In *Toll*, the Court held that the Immigration and Nationality Act and its amendments "represent[] a comprehensive and complete code covering ***all aspects of admission of aliens to this country***." *Toll*, 458 U.S. at 13 (quoting *Elkins v.*

THE GEO GROUP INC.'S MOTION FOR PARTIAL SUMMARY
JUDGMENT  — 15
(No. 3:18-CV-05233-RBL)
4813-4741-0844v.1 0088835-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 5th Avenue, Ste. 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Moreno*, 435 U.S. 647, 98 S.Ct. 1338, 1348 (1978)) (internal punctuation omitted, emphasis

added). The Immigration and Nationality Act and its amendments are codified at 8 U.S.C.

chapter 12,[8] which chapter includes 8 U.S.C. §1231.[9] Section 1231 explicitly includes "the

detention, release, and removal of aliens ordered removed" and "places of detention," including

the use of non-federal "detention center[s] or other comparable facility[ies] suitable for such

use." 8 U.S.C. §1231(a), (g). Immigration detention facilities, including the NWDC, therefore

fall within the field of federal immigration law that Congress has limited to federal regulation.

*See also Truax v. Raich*, 239 U.S. 33, 42, 36 S. Ct. 7, 11, 60 L. Ed. 131 (1915) ("The authority

to control immigration . . . is vested solely in the Federal government."). There is no room left

for state or local governments to regulate immigration detention facilities, including

modifications and expansions as appropriate to fulfill federal functions. The Ordinance is

therefore invalid under the field preemption doctrine.

### 3.    The Ordinance is invalid under the doctrine of Conflict Preemption.

If a local law "stands as an obstacle to the accomplishment and execution of the full

purposes and objectives of Congress," the local law is preempted under the principle of conflict

preemption. *United States v. City of Pittsburg, Cal.*, 661 F.2d 783, 785 (9th Cir. 1981).

Congress declared that the federal government "shall arrange for appropriate places of

detention for aliens detained pending removal or a decision on removal," including by renting

or leasing facilities not owned by the federal government. 8 U.S.C. § 1231(g). This means that

the federal government has the exclusive right and discretion in the immigration context to

decide where to house those subject to removal proceedings and how to house them. *See*, *e.g.*,

*Comm. of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1441 (9th Cir.), amended, 807 F.2d 769

(9th Cir. 1986) (the federal government has "discretion to select the place of detention of

aliens"); *Sinclair v. Atty. Gen. of U.S.*, 198 F. App'x 218, 222 n.3 (3d Cir. 2006) (federal

---

[8] Pub. L. No. 82-414, 66 Stat. 163 (1952).

[9] Congress added Section 1231 to Chapter 12 in 1996. Omnibus Consolidated Appropriations Act, Pub. L. No. 104-208, 110 Stat. 3009 (1996) (codified as amended at 8 U.S.C. §1231).

THE GEO GROUP INC.'S MOTION FOR PARTIAL SUMMARY
JUDGMENT  — 16
(No. 3:18-CV-05233-RBL)
4813-4741-0844v.1 0088835-000005

government has statutory authority "to detain aliens pending decisions on removal. Further, the place of detention is left to the discretion" of the federal government) (citing 8 U.S.C. 1231(g), other internal citations omitted); *Avramenkov v. I.N.S.*, 99 F. Supp. 2d 210, 213 (D. Conn. 2000) ("Congress has squarely placed the responsibility of determining where aliens are to be detained within the sound discretion" of the federal government).

Put differently, state and local governments have no right to impose regulations that restrict the federal government's discretion on whether, to what extent, and how to house immigration detainees at the facility of its choice, including facilities owned by a private entity. But that is exactly what the Ordinance seeks to do. The federal government, though agencies like ICE, the DOJ, and DHS, uses the NWDC to enforce federal immigration law. Suitable facilities are required to do this work, and the government must have flexibility to expand or modify its detention facilities as it deems appropriate and necessary. But the Ordinance prohibits any possible expansion or major modification, or alternatively forces any expansion or major modification through the burdensome, time consuming, and discretionary Conditional Use Permit process. In doing so, the City puts local interests ahead of the federal government and imposes obstacles for the implementation of federal immigration and detention policy. This the City cannot do.

The federal government has authority to decide where to house detainees and to establish (directly or by contract with a private party) appropriate facilities for detainees, in the federal government's discretion.[10] The City purports to categorically preclude or impose significant barriers regarding the use of that discretion beyond what existed when the Ordinance passed. This the City cannot do, and any application of the Ordinance to the NWDC is preempted.

## VII.   CONCLUSION

For the reasons discussed above, the Court should grant Plaintiff's Motion for Summary

---

[10] Plaintiff acknowledges that federal discretion is limited by Constitutional restrictions, none of which are at issue in this litigation.

Davis Wright Tremaine LLP
LAW OFFICES
920 5th Avenue, Ste. 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1   Judgment. Plaintiff respectfully requests that the Court declare that Ordinance 28491 violates the

2   Supremacy Clause of the United States Constitution, issue an injunction permanently enjoining

3   the City and its respective officers, agents, employees and attorneys from taking any action to

4   apply or enforce Ordinance 28491 against the Northwest Detention Center or any other

5   immigration detention facility, and award Plaintiff its reasonable costs and attorneys' fees

6   pursuant to 42 U.S.C. § 1988.

7          DATED this 25th day of July, 2019.

8

9                                          DAVIS WRIGHT TREMAINE LLP

10                                         By/s/ Clayton P. Graham
                                              Clayton P. Graham, WSBA # 38266
11                                            Joseph P. Hoag, WSBA #41971
                                              Grace Thompson, WSBA #54218
12                                            920 Fifth Avenue, Suite 3300
                                              Seattle, WA 98104
13                                            Telephone: 206.757.8052
                                              Fax: 206.757.7052
14                                            E-mail:  claytongraham@dwt.com
15                                            E-mail: josephhoag@dwt.com
                                              E-mail: gracethompson@dwt.com
16

17                                         and;

18                                         III Branches Law, PLLC

19

20                                         By/s/ Joan K. Mell
21                                            Joan K. Mell, WSBA #21319
                                              1019 Regents Blvd. Ste. 204
22                                            Fircrest, WA 98466
                                              Telephone: 253.566.2510
23                                            E-Mail: joan@3brancheslaw.com

24                                         Attorneys for The GEO Group, Inc.

25

26

27

THE GEO GROUP INC.'S MOTION FOR PARTIAL SUMMARY
JUDGMENT  — 18
(No. 3:18-CV-05233-RBL)
    4813-4741-0844v.1 0088835-000005

                                                        Davis Wright Tremaine LLP
                                                              LAW OFFICES
                                                          920 5th Avenue, Ste. 3300
                                                          Seattle, WA  98104-1610
                                                    206.622.3150 main · 206.757.7700 fax

1

**CERTIFICATE OF SERVICE**

2

I hereby declare under penalty of perjury under the laws of the State of Washington

3

and the United States that, on the date indicated below, I electronically filed the foregoing

4

document with the Clerk of the Court using the ECF system which will send notification of

5

such filing to the following:

6

7

DATED this 25th day of June, 2019.

8

*/s/ Amy E. Dahl*
Amy E. Dahl

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

THE GEO GROUP INC.'S MOTION FOR PARTIAL SUMMARY
JUDGMENT  — 19
(No. 3:18-CV-05233-RBL)
    4813-4741-0844v.1 0088835-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 5th Avenue, Ste. 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax