The Honorable Ronald B. Leighton

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

THE GEO GROUP, INC.,

               Plaintiff,

    v.

CITY OF TACOMA, a Washington municipal corporation,

               Defendant.

No. 3:18-CV-05233-RBL

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

RESPONSE TO CROSS-MOTION FOR SUMMARY JUDGMENT
(3:18-CV-05233-RBL)
4841-6561-9107v.1 0088835-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## <u>TABLE OF CONTENTS</u>

**Page**

I.  FACTS..................................................................................................................... 2

    A.  The City Targeted the NWDC with the 2017 Interim and Modified Interim Ordinances. ................................................................................... 2

    B.  The City Passes the Permanent 2018 Ordinance, Which Targets and Restricts Only the NWDC. ................................................................... 4

    C.  The City Alleges it Did Not Mean To Discriminate Against the NWDC But Takes No Action to Correct the Error Until About a Year and a Half After this Litigation Commenced. ......................................................... 6

    D.  The City Agrees to File Cross-Partial Summary Judgment Motions on the Supremacy Clause Claim only, Inducing Plaintiff to Delay Depositions. ........................................................................................... 7

II.  ARGUMENT ......................................................................................................... 8

    A.  Plaintiff Has Standing and Its Supremacy Clause Claim is Ripe for Review. ................................................................................................... 8

        1.  The dispute satisfies constitutional and prudential justiciability.............. 9

            a.  The final decision standard does not apply to Supremacy Clause claims. ............................................................................ 11

            b.  Plaintiff's challenge is facial and thus not subject to a final decision requirement. ......................................................... 12

            c.  Seeking a final decision from the City would be futile. ............. 13

        2.  The Court should ignore the City's improper attempt to dismiss Plaintiff's other constitutional claims, which are ripe in any case. ........ 15

    B.  The Ordinance Prohibits Any NWDC Expansion or Major Modification, by Conditional Use Permit or Otherwise............................................. 16

    C.  Intergovernmental Immunity................................................................ 18

        1.  The City argues that derivative sovereign immunity does not apply to Plaintiff in this case, where Plaintiff has raised no such argument. ............................................................................................... 18

        2.  The Ordinance is a textbook example of a direct regulation of the NWDC property and therefore is invalid. ............................................. 20

RESPONSE TO CROSS-MOTION FOR SUMMARY JUDGMENT
(3:18-CV-05233-RBL) - i
4841-6561-9107v.1 0088835-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

3. The Ordinance discriminates against the NWDC because it continues to treat the NWDC differently than correctional facilities and because the City understood that the Ordinance would place new restrictions on the NWDC only. ................................ 24

D. Preemption ........................................................................................... 27

1. Congress has occupied the field regarding detention centers. ................ 28

2. The Ordinance is an obstacle to accomplishing the full purpose of Congress. ............................................................................................... 29

3. The statutory framework, structure, and purpose of federal immigration law expressly preempts any state or local law the purports to regulate federal immigration detention facilities. ................ 30

E. Plaintiff is Entitled to Injunctive and Declaratory Relief. ................... 31

1. Plaintiff is entitled to injunctive relief. ................................................. 31

2. Plaintiff is entitled to declaratory relief. ................................................ 32

F. Plaintiff is Entitled to Attorneys' Fees Under 42 U.S.C. § 1988. ..................... 33

III. CONCLUSION ........................................................................................... 35

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

RESPONSE TO CROSS-MOTION FOR SUMMARY JUDGMENT
(3:18-CV-05233-RBL) - ii
4841-6561-9107v.1 0088835-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*8679 Trout, LLC v. N. Tahoe Pub. Utilities Dist.*,
   No. 2:10CV01569MCE EFB, 2010 WL 3521952 (E.D. Cal. Sept. 8, 2010).................12, 13

*AES Sparrows Point LNG, LLC v. Smith*,
   470 F. Supp. 2d 586 (D. Md. 2007)......................................................................................11

*Arizona Dream Act Coal. v. Brewer*,
   757 F.3d 1053 (9th Cir. 2014) ............................................................................................32

*Bilbrey by Bilbrey v. Brown*,
   738 F.2d 1462 (9th Cir. 1984) ............................................................................................32

*Blackburn v. U.S.*,
   100 F.3d 1426 (9th Cir. 1996) .......................................................................................20, 21

*Blue Sky Entm't, Inc. v. Town of Gardiner*,
   711 F. Supp. 678 (N.D.N.Y. 1989) .....................................................................................12

*Boeing Co. v. Movassaghi*,
   768 F.3d 832 (9th Cir. 2016) .........................................................................18, 19, 20, 23

*Campbell-Ewald Co. v. Gomez*,
   136 S. Ct. 663 (2016) ...................................................................................................19, 23

*City of Auburn v. Qwest Corp.*,
   260 F.3d 1160 (9th Cir. 2001), *overruled on other grounds* .............................................11

*City of New Rochelle v. Town of Mamaroneck*,
   111 F. Supp. 2d 353 (S.D.N.Y. 2000) .................................................................................13

*Concrete Corp. v. Town of Roxbury*,
   442 F.3d 159 (3d Cir. 2006) ...............................................................................................13

*Corn v. City of Lauderdale Lakes*,
   816 F.2d 1514 (11th Cir. 1987) ..........................................................................................14

*Cty. of Santa Clara v. Trump*,
   250 F. Supp. 3d 497 (N.D. Cal.).........................................................................................11

*Del Monte Dunes at Monterey, Ltd. v. City of Monterey*,
   920 F.2d 1496 (9th Cir.1990) .............................................................................................35

RESPONSE TO CROSS-MOTION FOR SUMMARY JUDGMENT
(3:18-CV-05233-RBL) - iii
4841-6561-9107v.1 0088835-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Desert Outdoor Advert., Inc. v. City of Moreno Valley*,
   103 F.3d 814 (9th Cir. 1996) ..................................................................13, 14

*eBay Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006) ....................................31

*English v. General Elec. Co.*,
   496 U.S. 72, 110 S.Ct 2270 (1990) ......................................................................29

*Fisher v. Durham*,
   881 F.2d 1083 (9th Cir. 1989) ..............................................................................25

*Franklin California Tax-Free Tr. v. Puerto Rico*,
   805 F.3d 322 (1st Cir. 2015) .........................................................................11, 13

*Gerling Global Reinsurance Corp. of Am. v. Garamendi*,
   400 F.3d 803 (9th Cir.2005) ...........................................................................33, 34

*Goodyear Atomic Corp. v. Miller*,
   486 U.S. 174, 108 S.Ct. 1704 (1988) ..................................................................20

*Hacienda Valley Mobile Estates v. City of Morgan Hill*,
   353 F.3d 651 (9th Cir. 2003) ................................................................................12

*Herrington v. Cty. of Sonoma*,
   857 F.2d 567 (9th Cir. 1988) ..........................................................................13, 14

*Hoagland v. Town of Clear Lake, Ind.*,
   415 F.3d 693 (7th Cir. 2005) ................................................................................11

*Hoehne v. Cty. of San Benito*,
   870 F.2d 529 (9th Cir. 1989) ..........................................................................14, 15

*Keifer & Keifer v. Reconstruction Finance Corp.*,
   306 U.S. 381, 59 S. Ct. 516 (1939) .....................................................................19

*Lamb v. Martin Marietta Energy Sys., Inc.*,
   835 F. Supp. 959 (W.D. Ky. 1993) ......................................................................19

*Legal Def. Grp. v. Adams*,
   657 F.2d 1118 (9th Cir. 1981) ..............................................................................33

*Maher v. Gagne*,
   448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980) ........................................33

*Mariners of Richardson Bay v. Richardson Bay Reg'l Agency*,
   872 F.2d 429, 1989 WL 36756 (9th Cir. 1989)....................................................12

RESPONSE TO CROSS-MOTION FOR SUMMARY JUDGMENT
(3:18-CV-05233-RBL) - iv
4841-6561-9107v.1 0088835-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*McCulloch v. Maryland,*
  17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819) ........................................22

*Melendres v. Arpaio,*
  695 F.3d 990 (9th Cir. 2012) ............................................................32

*Monterey Mech. Co. v. Wilson,*
  125 F.3d 702 (9th Cir. 1997) ............................................................32

*Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n,*
  461 U.S. 190, 103 S. Ct. 1713 (1983) .................................................10

*Pac. Legal Found. v. State Energy Res. Conservation & Dev. Comm'n,*
  659 F.2d 903 (9th Cir. 1981) ..............................................................8

*Shanks v. Dressel,*
  540 F.3d 1082 (9th Cir. 2008) ...........................................................35

*Susan B. Anthony List v. Driehaus,*
  573 U.S. 149, 134 S. Ct. 2334 (2014) .................................................10

*Thomas v. Anchorage Equal Rights Comm'n,*
  220 F.3d 1134 (9th Cir. 2000) .............................................................8

*Toll v. Moreno,*
  458 U.S. 1, 102 S. Ct. 2977 (1982) ................................................27, 28

*U.S. Postal Serv. v. City of Berkeley,*
  228 F. Supp. 3d 963 (N.D. Cal. 2017) ............................................10, 26

*U.S. Postal Serv. v. City of Hollywood, Fla.,*
  974 F. Supp. 1459 (S.D. Fla. 1997) ...............................................12, 22

*U.S. Postal Service v. City of Berkeley,*
  No. C 16-04815 WHA, 2018 WL 2188853 (N.D. Cal. May 14, 2018) ..........25, 26

*U.S. Postal Service v. Town of Greenwich,*
  901 F. Supp. 500 (D. Conn., 1995) ................................................22, 31

*U.S. v. City of Pittsburg, Cal.,*
  661 F.2d 783 (9th Cir. 1981) .............................................................29

*U.S. v. Pennsylvania Environmental Hearing Board,*
  584 F.2d 1273 (3rd. 1978) ................................................................23

*U.S. v. Town of Windsor,*
  496 F.Supp. 581 (D. Conn. 1980) ..................................................22, 23

RESPONSE TO CROSS-MOTION FOR SUMMARY JUDGMENT
(3:18-CV-05233-RBL) - v
4841-6561-9107v.1 0088835-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*United States v. Arizona*,
    641 F.3d 339 (9th Cir. 2011), *reversed on other grounds by* 567 U.S. 387,
    132 S. Ct. 2492 (2012) ........................................................................................27

*United States v. Boyd*,
    378 U.S. 39, 84 S. Ct. 1518 (1964) ...............................................................19, 20

*United States v. Braren*,
    338 F.3d 971 (9th Cir. 2003) ................................................................................9

*United States v. California*,
    921 F.3d 865 (9th Cir. 2019) ........................................................................ *passim*

*United States v. City of Arcata*,
    629 F.3d 986 (9th Cir. 2010) ...............................................................21, 22, 26

*United States v. Locke*,
    529 U.S. 89, 120 S. Ct. 1135 (2000) ...................................................................27

*Valle del Sol Inc. v. Whiting*,
    732 F.3d 1006 (9th Cir. 2013) ............................................................................27

*Verizon Wireless LLC v. City of Rio Rancho*,
    476 F. Supp. 2d 1325 (D.N.M. 2007) ..................................................................13

*Washington v. GEO*,
    2018 WL 6448778 ...........................................................................................23, 25

*Washington v. GEO*,
    283 F.Supp.3d 967 (W.D. Wash. 2017) .........................................................28, 29

*Washington v. GEO Group, Inc.*,
    Case No. 3:17-cv-5806-RJB, 2019 WL 3565105 (W.D. Wash. Aug. 6, 2019) ........... *passim*

*Westmark Dev. Corp. v. City of Burien*,
    504 F. App'x 560 (9th Cir. 2013) .......................................................................33

*Wolfson v. Brammer*,
    616 F.3d 1045 (9th Cir. 2010) ..............................................................................9

**State Cases**

*Ellensburg Cement v. Kittitas Cty.*,
    179 Wn.2d 737 (2014) (en banc).........................................................................17

**Federal Statutes**

8 U.S.C. § 1231(a) & (g) .........................................................................................28

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

8 U.S.C. § 1231(g)(1) ........................................................................................................29

8 U.S.C. § 1231(g)(2) ........................................................................................................29

39 U.S.C. § 401(5) .............................................................................................................31

40 U.S.C. Chapter 33 .........................................................................................................30

40 U.S.C. § 3301(a)(5) ......................................................................................................31

40 U.S.C. § 3301(b) ...........................................................................................................30

40 U.S.C. § 3312(c) ...........................................................................................................30

42 U.S.C. § 1988 ................................................................................................................33

Immigration and Nationality Act § 241(g) (8 U.S.C. § 1231(g)) ...............................2, 28, 30, 31

**Rules**

FRE 801(c) .....................................................................................................................7, 25

FRE 802 ...............................................................................................................................7

**Constitutional Provisions**

U.S. Constitution Article III ................................................................................................9

U.S. Constitution Supremacy Clause .................................................................................20

**Other Authorities**

: http://cityoftacoma.granicus.com/MediaPlayer.php?view_id=3&clip_id=2942
   (last visited September 3, 2019) .....................................................................................5

: http://cityoftacoma.granicus.com/MediaPlayer.php?view_id=4&clip_id=2363
   (last visited September 3, 2019) .....................................................................................3

: http://cityoftacoma.granicus.com/MediaPlayer.php?view_id=4&clip_id=2455
   (last visited September 3, 2019) .....................................................................................4

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1   The City's Motion misapprehends the facts and misapplies the law. The City argues that

2   Plaintiff's Supremacy Clause claim should be dismissed because there is no "final decision"—

3   no Conditional Use Permit denial and no variance. But the final decision requirement applies to

4   neither Supremacy Clause claims nor facial constitutional challenges, and Plaintiff's claim at

5   issue in the instant cross-motions is both. The City asserts that the Ordinance might not restrict

6   the Northwest Detention Center ("NWDC") because Plaintiff can apply for a Conditional Use

7   Permit. But the City ignores that the Ordinance's plain language explicitly forecloses the

8   possibility of a Conditional Use Permit for the NWDC unless Plaintiff physically picks up and

9   moves the NWDC to a separate area of the City, which is obviously impossible. This fact

10  underscores another reason why seeking a Conditional Use Permit is not required for Plaintiff

11  to bring its Supremacy Clause or other claims—any such effort would be futile.

12      The City next argues that Plaintiff is not immune from the Ordinance under the theory

13  of derivative sovereign immunity. But that immunity and intergovernmental immunity are

14  different, even though both stem from the Supremacy Clause. The City further confuses case

15  law interpreting the two separate intergovernmental immunity analyses—direct regulation and

16  nondiscrimination. Regarding the former, the City acknowledges that direct regulation occurs if

17  the Ordinance regulates federal property. Because federal contractors are treated the same as

18  the federal government for purposes of intergovernmental immunity, this test is clearly satisfied

19  because the Ordinance, by its very nature, regulates the NWDC property. The Ordinance

20  further violates the nondiscrimination prong because, on its face (and as the City admits), it

21  treats the NWDC differently than local government-run correctional facilities. And even if it

22  did not, the City ignores a critical fact in this case—the City passed the Ordinance with full

23  knowledge and understanding that the Ordinance would inflict new restrictions on the NWDC

24  and the NWDC alone.

25      The City's preemption arguments likewise fail. The City argues that there is a

26  presumption against preemption but ignores that this presumption does not apply when the

27  subject matter is "an area where there has been a history of significant federal presence,"

RESPONSE TO CROSS-MOTION FOR SUMMARY JUDGMENT
(3:18-CV-05233-RBL) - 1
4841-6561-9107v.1 0088835-000005

including federal immigration and detention. As the Courts have recognized, the Immigration and Nationality Act occupies the field of federal immigration law and explicitly includes federal immigration detention centers that the federal government leases from third parties like Plaintiff.

Plaintiff is a federal contractor that operates the NWDC for the exclusive use and benefit of the federal government and its federal immigration law enforcement functions. The Ordinance is a regulation on the NWDC and prohibits the NWDC from ever expanding or undergoing modifications. The City has always known the Ordinance would have this effect but has nonetheless stayed the course. Plaintiff's Supremacy Clause claim is ripe for adjudication. The Court should grant Plaintiff's Motion for Partial Summary Judgment and deny the City's Motion for Summary Judgment.

# I.      FACTS

### A.      The City Targeted the NWDC with the 2017 Interim and Modified Interim Ordinances.

The City's Interim Emergency Ordinance 28417 ("Interim Ordinance"), which the City Council enacted on March 7 2017, singled out the NWDC by name, legally differentiated the NWDC from local government-run correctional facilities, noted that the NWDC might expand, and rendered the NWDC (and only the NWDC) "as an unpermitted use in all zoning districts" throughout the City, thereby making further expansion unlawful. Declaration of Clayton P. Graham ("Graham Decl."), ¶ 2, & Ex. A. City correspondence from the same day the Interim Ordinance passed shows that the City considered and understood that the Interim Ordinance would be limited in its effect to the NWDC and would not affect other, similar correctional facilities. Graham Decl., ¶ 3, & Ex. B.[1] Also that same day, Councilmember Robert Thoms stated that he had concerns about the NWDC's expansion and that citizens did not want the

---

[1] In response to Councilmember inquiries regarding the NWDC and the effect of the Interim Ordinance, on March 7, 2017, Tacoma Assistant City Manager Mark Lauzier wrote: "Regulations impact on public custody facilities such as Remann Hall. Since the regulation impacts private correctional facilities, it should not impact facilities owned and operated by the public."

RESPONSE TO CROSS-MOTION FOR SUMMARY JUDGMENT
(3:18-CV-05233-RBL) - 2
4841-6561-9107v.1 0088835-000005

NWDC in Tacoma anymore.[2] Councilmember Conor McCarthy likewise stated on the record that policy issues related to the NWDC justified the emergent nature of the Interim Ordinance.[3] On April 21, 2017, less than two months after voting in favor of the Interim Ordinance, Councilmember Anders Ibsen wrote: "I'm not a GEO Group fan by any means…. I was proud to vote for the land use decision to limit their ability to expand their footprint, and will continue to advocate for local and national policies that benefit immigrant communities rather than pander to fearmongering." Graham Decl., ¶ 4, & Ex. C.

On May 9, 2017, the City Council enacted Ordinance No. 28429, which extended the Interim Ordinance by a year with modifications, including the removal of explicit reference to the NWDC. *Id.* at ¶ 5, & Ex. D. Removing the NWDC's name, however, did not reflect a change in the City Council's intent to restrict the NWDC. About two and a half weeks before the May 9 vote, a letter from then-City Planning Commission Chairperson Chris Beale to the City Council regarding the Modified Interim Ordinance stated:

> The Commission also acknowledges the sentiment of the community regarding immigration, social justice and associated issues. President Donald Trump's xenophobic and racist rhetoric, coupled with his stated desire to expand detention and deportation efforts, runs in direct conflict with the city's adopted policy to be a welcoming, inclusive, equitable and socially just community. In my view, the Commission is committed to opposing Trump's immigration policies and addressing these issues in the immediate future is a priority.

*Id.* at ¶ 6, & Ex. E. The City Council was informed again that the Ordinance would only affect the NWDC because "[b]oth of the public correctional facilities in the city (Pierce County Jail and Remann Hall) are non-conforming." *Id.* Also about two weeks prior, Councilmember Ryan Mello stated at a City Council meeting, "I'm not under the impression that we're going to close down the center tomorrow or anytime soon, unfortunately,"[4] and Councilmember Lauren

---

[2] *See* March 7, 2017 Tacoma City Council Study Session, starting at 2:36:15 (via video archive), located at the following municipal link: http://cityoftacoma.granicus.com/MediaPlayer.php?view_id=4&clip_id=2363 (last visited September 3, 2019). Although Councilmember Thoms is not visible in the video, Plaintiff understands the comment to be his based on video's context.

[3] *Id.*, starting at 2:43:00. Although Councilmember McCarthy is not visible in the video, Plaintiff understands the comment to be his based on the video's context.

[4] Graham Decl., ¶ 7, & Ex. F at 78:11-14.

RESPONSE TO CROSS-MOTION FOR SUMMARY JUDGMENT
(3:18-CV-05233-RBL) - 3
4841-6561-9107v.1 0088835-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Walker-Lee lamented "a ridiculous federal policy that is incarcerating these people" while discussing the NWDC.[5] The Friday before he voted in favor of the Modified Interim Ordinance, Councilmember Anders wrote, "I'm disgusted at private prisons…. While legally we cannot make a distinction between for-profit and government-run correctional facilities, I will fight to ensure we can make meaningful permanent changes to our code that sets a clear line in the sand. I expect GEO Group to continue their resistance, but it's clear which side the community is on." Graham Decl., ¶ 8, & Ex. G. Two days before voting to pass the Modified Interim Ordinance, then-Mayor Maryland Strickland[6] noted that the modified Interim Ordinance's desired outcome was to limit the amount of detainees at the NWDC.[7]

**B.    The City Passes the Permanent 2018 Ordinance, Which Targets and Restricts Only the NWDC.**

About nine months later, the City sought to make the Interim Ordinance restrictions permanent through Amended Ordinance 28491 (the "Ordinance"). Graham Decl., ¶ 9, & Ex. H. The permanent Ordinance did not reference the NWDC by name, but the purpose and effect to restrict the NWDC's ability to expand, and the NWDC alone, remained. On January 17, 2018, the City's Planning Commission sent the City Council a report with recommendations regarding the proposed Ordinance. *Id.* at ¶ 10, & Ex. I. The report informed the City Council that the Ordinance's proposed restrictions on detention and correctional facilities related to three facilities only—one detention facility (the NWDC) and two correctional facilities (the Peirce County Jail and Remann Hall). *Id.* The report further confirmed, again,[8] that the Ordinance's practical effect would be to restrict the NWDC only—both the jail and juvenile detention center were already "nonconforming uses" under prior regulations and would "not [be] significantly impacted" by the new Ordinance's regulations. *Id.* at ¶ 10, & Ex. I.

---

[5] *Id.* at 10:2-3.
[6] The mayor votes with the City Council.
[7] *See* May 2, 2017 Tacoma City Council Study Session, starting at 1:41:24 (via video archive), located at the following municipal link: http://cityoftacoma.granicus.com/MediaPlayer.php?view_id=4&clip_id=2455 (last visited September 3, 2019). Although Mayor Strickland is not visible in the video, Plaintiff understands the comment to be hers based on the video's context.
[8] *See* Graham Decl., ¶¶ 6, 10, and 12, & Exs. E, I, and K.

RESPONSE TO CROSS-MOTION FOR SUMMARY JUDGMENT
(3:18-CV-05233-RBL) - 4
4841-6561-9107v.1 0088835-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

On February 6, 2018, the City Council conducted a public hearing on the proposed ordinance.[9] Just hours before the vote to make the Interim Ordinance permanent, Councilmember Mello wrote, "I do not support the Geo Group and private prisons and [sic] working to find opportunities to not permanently allow for the zoning of private detention facilities." *Id.* at ¶ 11, & Ex. J. At the public hearing, Councilmember Chris Beale commented that "[w]e do not feel [the NWDC] fits within the moral compass of the City and that the majority of the comments I recall hearing is that [sic] we would like that eventually removed and the limits on that tightened in terms of expansion abilities."[10] One week later, the City's Deputy Attorney acknowledged that, under the Ordinance, "the NWDC becomes non conforming in the zone, greatly limiting its ability to expand." *Id.* at ¶ 12, & Ex. K. The City's 2018 "Federal Priorities Agenda" included urging Congressional delegates to call on DHS to end the use of privately operated prisons, such as the NWDC. *Id.* at ¶ 13, & Ex. L.

On March 7, 2018, the City Council adopted the Ordinance. TMC 13.05.080;[11] Graham Decl., ¶¶ 9 and 14, & Ex. H. The Ordinance distinguished between correctional facilities (facilities that hold persons for punishment, correction, or rehabilitation) and detention facilities (facilities that hold persons for purposes other than punishment, correction, or rehabilitation). Graham Decl., ¶ 9, & Ex. H. As the City Planning Commission explained, the lone detention facility was the NWDC. *Id.* at ¶ 10, & Ex. I. The Ordinance prohibits the construction, expansion, or major modification of detention or correction facilities outside of areas zoned M-1, and permits such facilities within an M-1 zone only with a Conditional Use Permit. TMC 13.06.400.C5, District Use Table. But the Ordinance also prohibits Conditional Use Permits for any detention facilities, the universe of which is the NWDC alone, outside of land zoned M-1 as of January 1, 2018. *Id.* at Ex. H. The Ordinance imposes no such restrictions on

---

[9] *See* February 6, 2018 Tacoma City Council Public Hearing relating to permanent correctional and detention facility regulations (via video archive), located at the following municipal link: http://cityoftacoma.granicus.com/MediaPlayer.php?view_id=3&clip_id=2942 (last visited September 3, 2019).
[10] February 6, 2018 Tacoma City Council Public Hearing relating to permanent correctional and detention facility regulations, starting at 47:53 (via video archive), located at the following municipal link: http://cityoftacoma.granicus.com/MediaPlayer.php?view_id=3&clip_id=2942 (last visited September 3, 2019).
[11] Courtesy copies are attached as Graham Decl., Ex. M.

RESPONSE TO CROSS-MOTION FOR SUMMARY JUDGMENT
(3:18-CV-05233-RBL) - 5
4841-6561-9107v.1 0088835-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

government-run correctional facilities, the only kind of correctional facilities that exist. *Id.* In other words, the Ordinance prohibits the NWDC, and only the NWDC, from securing a Conditional Use Permit unless the land where the NWDC is built was zoned M-1 as of January 1, 2018. *Id.* On January 1, 2018, the NWDC was zoned PMI, not M-1. City's Answer to Complaint, ¶ 15 (Dkt. No. 10).

C.     **The City Alleges it Did Not Mean To Discriminate Against the NWDC But Takes No Action to Correct the Error Until About a Year and a Half After this Litigation Commenced.**

Plaintiff filed the instant lawsuit on March 22, 2018. Dkt. No. 1. The City filed its Answer on April 27, 2018, and repeatedly alleged that the Ordinance's prohibition on Conditional Use Permits for detention facilities not zoned "M-1" as of January 1, 2018, should have extended to correctional facilities as well. Dkt. No. 10 at ¶¶ 10, 36, 57-59. The City called the disparate treatment a "scrivener's error" and asserted that such error was "in the process of being amended legislatively." *Id.* at ¶ 57. Notably, the City identifies no other intended change to the Ordinance. *See generally id.*

The City then took no action for over a year. Graham Decl., ¶ 15. Sixteen months after filing its Complaint, and without any indication the City intended to address the alleged scrivener's error, Plaintiff filed its Motion for Partial Summary Judgment on its Supremacy Clause claim and tried to schedule depositions for its Equal Protection and Due Process claims. *See* Dkt. No. 50; Graham Decl., ¶ 15, & Ex. O. Still, the City took no action regarding the alleged scrivener's error until August 7, 2019, when it introduced a proposed ordinance limited to addressing the alleged error. *Id.* at ¶ 16, & Ex. P. The City admits that, even if the amendment to the Ordinance passes—and the vote has not happened yet—it will not pass until after the noting date for the parties' Cross-Motions for Partial Summary Judgment is past. *See* Dkt. No. 66 at ¶ 5.

The City provides no justification for waiting over sixteen months to introduce legislation to correct the alleged scrivener's error. Nor does the City provide any competent evidence that the Ordinance's facially disparate treatment between the NWDC and local

RESPONSE TO CROSS-MOTION FOR SUMMARY JUDGMENT
(3:18-CV-05233-RBL) - 6
4841-6561-9107v.1 0088835-000005

government-run correctional facilities was in fact a scrivener's error. Instead, the City's Deputy Attorney provides an unsworn, out-of-court statement given for the truth of the matter asserted relating to one councilmember only. *See* Dkt. No. 66 at ¶ 3. Even if such hearsay was admissible (it is not under FRE 801(c) and 802), no other evidence surrounding the Ordinance's actual passage supports the City's scrivener's error claim. The Ordinance's January 1, 2018, restriction was added and removed several times throughout the Ordinance's legislative process but was only ever attached to the NWDC; it never applied to correctional facilities. Graham Decl., ¶ 17, & Exs. Q-S. Specifically, the restriction first appeared in the Ordinance's Suggested Amendment No. 2, then was removed in Suggested Amendment No. 3. *Id.* at Exs. Q and R. The Ordinance's Suggested Amendment No. 4 added a new restriction, which again would affect the NWDC only: "As to nonconforming uses: no increase in detainee capacity is permitted. However, modifications or expansions to existing facilities that do not increase capacity shall be processed as a major modification…." *Id.* at Ex. S. This language was ultimately removed, and the City added the prohibition on any expansions or modifications to facilities not zoned M-1 before January 1, 2018 back into the Ordinance before it became final. *Id.* at ¶ 17, *see also* Ex. H. At no point during this process did the City impose this prohibition on correctional facilities. *Id.* at ¶ 17.

### D.   The City Agrees to File Cross-Partial Summary Judgment Motions on the Supremacy Clause Claim only, Inducing Plaintiff to Delay Depositions.

Plaintiff filed its Motion for Partial Summary Judgment on its Supremacy Clause claim on July 25, 2019. Dkt. No. 50. Plaintiff also attempted to schedule depositions of City Councilmembers in support of its Equal Protection and Due Process claims. Graham Decl., Ex. O. The City then contacted Plaintiff and requested a cross-motion briefing schedule and that Plaintiff postpone its intended depositions until after the Court rules on the parties' cross-motions. *Id.* at ¶ 18, & Ex. T. The City represented that its motion would be limited to the Supremacy Clause:

> This will be a cross-MPSJ asking the Court to determine that (1) Ordinance 28491 does not violate the Supremacy Clause of the U.S. Constitution, and

RESPONSE TO CROSS-MOTION FOR SUMMARY JUDGMENT
(3:18-CV-05233-RBL) - 7
4841-6561-9107v.1 0088835-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

(2) that the City's zoning authority and its right to rezone the GEO Group property through Ordinance 28491 is not preempted by Federal law.

*Id.* The City further represented that "given that the MPSJ's address legal issues, the requested deposition testimony is not necessary to the court's resolution of these issues." *Id.* at ¶ 19, & Ex. U. Consistent with these representations, the parties filed (and the Court entered) a joint stipulated motion and order for a briefing schedule and new discovery deadlines, noting that the City's forthcoming motion for summary judgment would be "based on the same Supremacy Clause issue" as Plaintiff's motion. Dkt. No. 55 at 2. But for these representations and order, Plaintiff would have taken its intended depositions already. Graham Decl., ¶ 20, & Ex. O.

## II.    ARGUMENT

### A.    Plaintiff Has Standing and Its Supremacy Clause Claim is Ripe for Review.

The Ordinance regulates the NWDC in violation of the Supremacy Clause's intergovernmental immunity and preemption doctrines, and Plaintiff has the right to seek invalidation of the Ordinance—now. The City alleges that no case or controversy exists without a "final decision" from the City on the Ordinance's application, rendering Plaintiff's claim unripe.[12] The City is incorrect and Plaintiff's claims are both constitutionally and prudentially ripe. The City's arguments to the contrary fail because the "final decision" standard the City relies on does not apply to Plaintiff's Supremacy Clause claim, and further does not apply to facial challenges. Moreover, even if a final decision was required here (it is not), the obligation is excused due to futility. Further, the City's motion to dismiss Plaintiff's non-Supremacy Clause claims are improper at this juncture, given the City's representations and inducements.[13]

---

[12] The City mentions standing in its cross motion but argues the requirements of ripeness only. The City apparently recognizes that the doctrines are "closely related," *Pac. Legal Found. v. State Energy Res. Conservation & Dev. Comm'n*, 659 F.2d 903, 915 (9th Cir. 1981), and that in "measuring whether the litigant has asserted an injury that is real and concrete rather than speculative and hypothetical, the ripeness inquiry merges almost completely with standing." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138–39 (9th Cir. 2000) (internal citation omitted). Plaintiff agrees that the two are not materially distinguishable in this dispute, and given that the City's argument hinges on the timing of Plaintiff's suit and exhaustion of administrative remedies, ripeness is the more applicable doctrine. But to be clear, Plaintiff has standing for the same reasons its claims are ripe.

[13] The City's brief includes an irrelevant "Procedural History" discussion, presumably under the guise of its ripeness argument. City Br. at 9-10. The City's discussion is rife with speculation and conclusory assertions that are neither accurate nor bear on the disputes at issue in the pending Cross-Motions. To the extent the City implies that prior rulings control the outcome of the pending motions, Plaintiff disputes the City's unsupported suggestion.

RESPONSE TO CROSS-MOTION FOR SUMMARY JUDGMENT
(3:18-CV-05233-RBL) - 8
4841-6561-9107v.1 0088835-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*1.    The dispute satisfies constitutional and prudential justiciability.*

Ripeness has both a constitutional and a prudential component. "The ***constitutional ripeness*** of a declaratory judgment action depends upon 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *United States v. Braren*, 338 F.3d 971, 975 (9th Cir. 2003) (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510 (1941) (emphasis added)). The ***prudential component*** of ripeness requires federal courts to consider "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Wolfson v. Brammer*, 616 F.3d 1045, 1060 (9th Cir. 2010) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149, 87 S. Ct. 1507, 18 L.Ed.2d 681 (1967)).[14]

Plaintiff's Supremacy Clause claim is constitutionally ripe. There is a substantial controversy because the Ordinance prohibits the NWDC from any expansion or modification, regardless of underlying federal interests regarding immigration detention operations there. As the City admits, the Ordinance only permits a detention center to expand or undergo major modifications if it secures a Conditional Use Permit. But the Ordinance's plain language prohibits Plaintiff from securing a Conditional Use Permit because the NWDC was not zoned M-1 on January 1, 2018. *See* TMC 13.06.400.C5, District Use Table, "Detention facility." The Ordinance therefore prohibits any future NWDC expansion or major modification.

The City and its declarants suggest Plaintiff can still apply for and obtain a Conditional Use Permit for the NWDC. But they fail to reconcile their position with the Ordinance's plain language. Their legal opinions are simply wrong and do not undo the substantial controversy between the parties. And even if Plaintiff could seek a Conditional Use Permit for the NWDC (it cannot), such process objectively impose monetary and administrative burdens beyond a normal building permit, as Plaintiff outlined in its Motion and the City does not refute, but

---

[14] The City devotes several pages of its brief to Washington state case law related to exhaustion of administrative remedies. But ripeness and standing are purely federal issues stemming from Article III of the U.S. Constitution. Washington law is not binding or even relevant.

RESPONSE TO CROSS-MOTION FOR SUMMARY JUDGMENT
(3:18-CV-05233-RBL) - 9
4841-6561-9107v.1 0088835-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

rather confirms. Plaintiff's Motion for Partial Summary Judgment ("Motion") at 10-11; *see also* Schultz Decl., ¶¶ 4 & 8, Dkt. No. 67 at 2-3 (CUP process requires "additional review" beyond normal building permit). By way of comparison, constitutional standing existed in *U.S. Postal Serv. v. City of Berkeley*, 228 F. Supp. 3d 963, 966–67 (N.D. Cal. 2017), where the Postal Service challenged an ordinance that it claimed restricted its property to the point of preventing the property's future sale.[15] The city argued that the claim was not ripe because the Postal Service "is not currently taking any steps to sell the post office," but the court rejected that argument. *Id.* at 966-67. The court noted that the Postal Service sought redress for "interference with its ability to even attempt to find a buyer," not for any "*actual* attempt" to do so, and the zoning ordinance's "obstruction [was] active and ongoing." *Id.* (emphasis original). As in *Berkeley*, the Ordinance's ongoing development ban (or, at most, imposition of new, burdensome, and discretionary conditions on any further development) presents a "substantial controversy" of "sufficient immediacy and reality." *Id.*

Assuming prudential standing remains a valid obligation to satisfy, that requirement is also met.[16] The City does not argue that prudential standing is lacking. But regardless, the issues of intergovernmental immunity and preemption here are predominantly legal and neither party asserts that further discovery is needed to advance claims or defenses associated with the merits of these theories. *See Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201, 103 S. Ct. 1713 (1983) (dispute fit for judicial decision because the "question of preemption is predominantly legal" and need not await further factual development). Plaintiff brings a facial challenge to the Ordinance as it relates to the NWDC. Further, withholding a decision would result in hardship. Courts have found hardship where the plaintiff faces "lengthy and expensive administrative process[es] . . . without knowing whether

---

[15] The City cites a separate, unpublished decision from the *Berkeley* dispute, which Plaintiff addresses in its discussion on intergovernmental immunity in Section 2.C.3 below.

[16] The Supreme Court has called "prudential ripeness" into question because it "is in some tension with our recent reaffirmation of the principle that a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167, 134 S. Ct. 2334 (2014) (citations and quotations omitted).

RESPONSE TO CROSS-MOTION FOR SUMMARY JUDGMENT
(3:18-CV-05233-RBL) - 10
4841-6561-9107v.1 0088835-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

the successful navigation of that process would result in the ability" to proceed. *AES Sparrows Point LNG, LLC v. Smith*, 470 F. Supp. 2d 586, 593–94 (D. Md. 2007); *see also City of Auburn v. Qwest Corp.*, 260 F.3d 1160, 1173 (9th Cir. 2001), *overruled on other grounds* (hardship would result from delay because ordinance imposed multiple obligations, which included a $5,000 fee, an application with detailed information, and other cumbersome requirements); *Franklin California Tax-Free Tr. v. Puerto Rico*, 805 F.3d 322, 333 (1st Cir. 2015) (where decision on preemption claims "would be of practical assistance in setting the underlying controversy to rest, a refusal to grant relief would result in hardship to the parties."). The City suggests Plaintiff must pursue a Conditional Use Permit (which the Ordinance precludes in NWDC's case) or a variance, but both would involve costly and lengthy administrative processes. *See Cty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 530 (N.D. Cal.) ("Waiting for the Government to decide how it wants to apply the Order would only cause more hardship and would not resolve the legal question at issue: whether Section 9(a) as written is unconstitutional.").

> ### a.       *The final decision standard does not apply to Supremacy Clause claims.*

The City argues that Plaintiff must "first obtain [a] final decision[] regarding the application of the regulations to their property and the availability of variances." City's Cross-Motion for Summary Judgment ("City Br.") at 15 (quoting *Kinzli v. City of Santaklz Cruz*, 818 F.2d 1449, 1456 (9th Cir. 1987)). But the City fails to cite a single Supremacy Clause case. In fact, the City's ripeness argument ignores Plaintiff's Supremacy Clause claims entirely, and the City instead focuses exclusively on Plaintiff's Equal Protection and Due Process claims— which the City agreed are not the subject of these cross motions. *See* Section II.A.2, below.

There is no final decision requirement here because federal courts recognize the difference for ripeness purposes between fact-intensive claims such as equal protection, on the one hand, and Supremacy Clause claims on the other. *See, e.g.*, *Hoagland v. Town of Clear Lake, Ind.*, 415 F.3d 693, 699 (7th Cir. 2005) (failure to exhaust state law remedies rendered

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

inverse takings claim unripe, but not preemption claim, which was decided on the merits); *Mariners of Richardson Bay v. Richardson Bay Reg'l Agency*, 872 F.2d 429, 1989 WL 36756 (9th Cir. 1989) (rejecting premise that "existence of an actual preemption conflict cannot be determined until state regulation has been actually applied in a particular case"); *Blue Sky Entm't, Inc. v. Town of Gardiner*, 711 F. Supp. 678, 687-88 (N.D.N.Y. 1989) ("the final decision requirement" applied to the takings and as-applied procedural due process challenges, but ***not*** to preemption claims).

Further, courts recognize that requiring a plaintiff to go through local permitting procedures may run afoul of the Supremacy Clause, regardless of ***how*** those procedures are ultimately applied. Thus, in *U.S. Postal Serv. v. City of Hollywood, Fla.*, 974 F. Supp. 1459 (S.D. Fla. 1997), the Court held that the Supremacy Clause barred application of the building code to a private landowner when its lessee was the Postal Service, even though "no building permit ha[d] been sought for the project at the subject property." *Id.* at 1461. Here, Plaintiff brings a facial challenge to the Ordinance alleging it violates the Supremacy Clause regardless of how the procedures are applied. The dispute is ripe.

> ### b. *Plaintiff's challenge is facial and thus not subject to a final decision requirement.*

Even if the "final decision" requirement applied in the Supremacy Clause context (it does not), the requirement nevertheless does not apply here because Plaintiff brings a facial challenge to the Ordinance, and the final decision requirement is inapplicable to facial challenges under any constitutional theory (including equal protection and due process).

"Facial challenges are exempt from the" final decision requirement "because a facial challenge by its nature does not involve a decision applying the statute or regulation." *Hacienda Valley Mobile Estates v. City of Morgan Hill*, 353 F.3d 651, 655 (9th Cir. 2003). "A claim is a facial challenge in circumstances where a plaintiff's grievance derives entirely from the existence of the statute itself." *8679 Trout, LLC v. N. Tahoe Pub. Utilities Dist.*, No. 2:10CV01569MCE EFB, 2010 WL 3521952, at *4 (E.D. Cal. Sept. 8, 2010) (citing *Hacienda*

RESPONSE TO CROSS-MOTION FOR SUMMARY JUDGMENT
(3:18-CV-05233-RBL) - 12
4841-6561-9107v.1 0088835-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Valley*, 353 F.3d at 656). By its nature, a facial challenge does not involve a decision applying the challenged regulation, whereas as-applied challenges occur where the ordinance is not the sole basis for the challenge. *Id.* (citing *Hacienda Valley*, 353 F.3d at 655-56). "The distinction is critical as facial challenges are exempt from the "final decision" prong. . . ." *Id. See also Franklin California*, 805 F.3d at 333 (defendants correctly conceded ripeness because "plaintiffs allege that the very enactment of the Recovery Act, rather than the *manner* of enforcement, impairs their contractual rights"); *Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 163, 165-67 (3d Cir. 2006) ("final decision" requirement—seeking a variance to a zoning ordinance—did not apply because plaintiff brought facial equal protection and due process claims); *Verizon Wireless LLC v. City of Rio Rancho*, 476 F. Supp. 2d 1325, 1327 (D.N.M. 2007) (rejecting argument challenges to city permit requirements "will not be ripe until they apply for a permit" because "the [plaintiffs] are bringing a facial challenge to the Ordinance. They challenge the permit requirements themselves, not the application of the requirements.").

Here, Plaintiff alleges that there is no way the Ordinance could be applied in a constitutional manner to the NWDC. As a result, Plaintiff brings a facial challenge and need not obtain any final land use decision from the municipal body. *See City of New Rochelle v. Town of Mamaroneck*, 111 F. Supp. 2d 353, 360 (S.D.N.Y. 2000) ("These claims represent a facial challenge to the Local Law and Mamaroneck's authority to assert jurisdiction over development in New Rochelle. They are pure questions of law and are ripe for adjudication.").

> ### c.  *Seeking a final decision from the City would be futile.*

A plaintiff need not seek a "final decision" if such effort would be inadequate or futile. *Desert Outdoor Advert., Inc. v. City of Moreno Valley*, 103 F.3d 814, 818 (9th Cir. 1996); *see also Herrington v. Cty. of Sonoma*, 857 F.2d 567, 570 (9th Cir. 1988) (there is "no reason to require the pursuit of relief that cannot be granted."). Where, as here, the allegedly available administrative process can provide for no actual relief at all, compliance with the process is excused. For instance, the plaintiffs in *Moreno Valley* challenged an ordinance regulating and requiring permits for signs but did not themselves apply for a permit because the ordinance

RESPONSE TO CROSS-MOTION FOR SUMMARY JUDGMENT
(3:18-CV-05233-RBL) - 13
4841-6561-9107v.1 0088835-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

prohibited plaintiffs' signs that were located outside three permitted zones. 857 F.2d at 818. The court held that the plaintiffs could "challenge the permit requirement, even though they did not apply for permits, because applying for a permit would have been futile." *Id.* (citation omitted). The court relied in part on the fact that the "ordinance flatly prohibited appellants' off-site signs located outside the three permitted zones." *Id.*; *accord Corn v. City of Lauderdale Lakes*, 816 F.2d 1514, 1516 (11th Cir. 1987) (holding that, where ordinances "called for a complete moratorium on [plaintiff's] development of his property, any request for a variance would plainly have been futile"). As in *Moreno Valley*, the Ordinance here provides for no actual relief at all because the Ordinance's plain language precludes a Conditional Use Permit from issuing for the NWDC. *See* TMC 13.06.400.C5, District Use Table, "Detention facility." Even if a final decision were required here (it is not), such requirement would be excused for futility.

Moreover, even if an administrative remedy is technically possible, a plaintiff need not pursue it if it is unavailable as a practical matter. For example, in *Hoehne v. Cty. of San Benito*, the plaintiff brought claims (including Equal Protection and Due Process) to challenge a zoning regulation that the county had amended to preclude development. 870 F.2d 529, 531 (9th Cir. 1989). The Ninth Circuit reversed the trial court's ripeness dismissal because any effort by the plaintiff to seek a Conditional Use Permit would have been futile.[17]  The County Board of Supervisors had "sent a clear and, we believe, final signal announcing their views as to the acceptable use of the property." *Id.* at 535. Thus, "it would have been futile for the [plaintiff] to seek a General Plan amendment in their favor, because the supervisors had amended the General Plan in a manner clearly and unambiguously adverse to the application of the landowners." *Id.* Here, the City understood that the Ordinance would bar the NWDC from further development when the Ordinance passed, and contemporaneous statements from the City Council "sent a clear … final signal announcing their views as to the acceptable use of the

---

[17] Ironically, the City cites this same case for the proposition that courts are reticent to permit constitutional challenges to zoning laws. City Br. 21.

RESPONSE TO CROSS-MOTION FOR SUMMARY JUDGMENT
(3:18-CV-05233-RBL) - 14
4841-6561-9107v.1 0088835-000005

property." *Hoehne*, 870 F.2d at 535. Plaintiff therefore need not engage in a futile attempt at compliance with the City's demanded administrative remedies.

> **2.** ***The Court should ignore the City's improper attempt to dismiss Plaintiff's other constitutional claims, which are ripe in any case.***

The City's attempt to obtain summary judgment on Plaintiff's Equal Protection and Due Process claims is improper and conflicts with the City's prior representations and this Court's order. The City represented to Plaintiff (and later to this Court, Dkt. No. 55 at 2) that it intended to file a cross-partial summary judgment motion on Supremacy Clause issues alone. Based on that representation, the Plaintiff agreed to the City's request that the Plaintiff not seek additional discovery on Plaintiff's other claims until after the cross-motions are decided. The City now seeks dismissal of ***all*** Plaintiff's constitutional claims, including Equal Protection and Due Process claims, in contradiction of their representations that induced Plaintiff's postponement of depositions. Plaintiff believes the City's arguments fail because Plaintiff's challenge is facial and seeking administrative relief would be futile. But to the extent the Court concludes that the City's ripeness argument has merit, the Court should deny the City's motion as it pertains to Plaintiff's Equal Protection and Due Process claims without prejudice. Once Plaintiff completes its Equal Protection and Due Process discovery, the City may properly seek further relief, consistent with the stipulation the Court entered. *See Hoehne*, 870 F.2d at 535 (facts related to officials' views regarding "views as to the acceptable use of the property" relevant to futility holding).

Plaintiff raises a cognizable and competent claim that the City's Ordinance violates the Constitution. The Court should therefore decide Plaintiff's Supremacy Clause claim now. The City's suggestion that the Court can or should somehow avoid constitutional issues by ruling for the City is a non-sequitur—whether the Court decides Plaintiff's Supremacy Clause claim in the Plaintiff's favor or not, the Court's decision will decide a constitutional issue.

RESPONSE TO CROSS-MOTION FOR SUMMARY JUDGMENT
(3:18-CV-05233-RBL) - 15
4841-6561-9107v.1 0088835-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

**B.**     **The Ordinance Prohibits Any NWDC Expansion or Major Modification, by Conditional Use Permit or Otherwise.**

The Ordinance was intended to, and will in fact, prevent further expansion of NWDC in its current location.[18]  The City attempts to sidestep this issue by claiming the Ordinance would permit expansions to the NWDC through a Conditional Use Permit process and offers expert and lay opinions on this ultimate question of law. But the Ordinance is clear: detention facilities are permitted as a Conditional Use in areas zoned M-1, but they are prohibited *in all other zones, including the PMI zone in which NWDC is located*: "This CU is only available in the M-1 zones in place as of January 1, 2018." TMC 13.06.400.C5, District Use Table, "Detention facility."

The City's Principal Planner ignores this language in arriving at her conclusion that a Conditional Use Permit is available to the NWDC.[19]  Schultz Declaration, Dkt. No. 67 at 2-4. Likewise, the City's expert witness's statement that "expansion [to the NWDC] is allowable through the City's Nonconforming use and structure regulations" does not undo the Ordinance's prohibition on the NWDC expanding or undergoing modifications because, as Mr. Settle acknowledges, any such expansion would require a Conditional Use Permit. *See* Settle Expert Report, Dkt. No. 65-1 at 5. The Ordinance's prohibition is more specific, and was enacted more recently, than the Code's nonconforming use provisions, so it controls the availability of Conditional Use Permits for detention center uses. *See also* Howsley Expert Report, *attached as* Ex. W to Graham Decl., at 3 (acknowledging the City "argument" that the City Code could allow a legal nonconforming use to expand with a CUP, but noting that "the specific rules over the general in land use law ordinances"). The City's argument, and its

---

[18] The City strains to identify some non-discriminatory intent behind the Ordinance, *see* Response at 2-8, but ignores its undisputed knowledge that the Ordinance would affect the NWDC alone and the Councilmembers' clear hostility to the NWDC. At any rate, the City's purported rationale is pretext and debunked by the Expert Report of Greg Stuart. *See* Graham Decl., Ex. V.

[19] The City's Principal Planner indicates that a Conditional Use Permit is available to Plaintiff under the City's "major modification" process, but this conclusion is also contrary to the plain language of the Tacoma Municipal Code. The Code provides that "[m]ajor modifications *shall be processed in the same manner* and be *subject to the same decision criteria* that are currently required for the type of permit being modified." See TMC 13.05.080.C.1 (emphasis provided).  However, NWDC is currently prohibited in its M-1 zone by the Ordinance and the City acknowledges it did not previously obtain a Conditional Use Permit. Schultz Declaration, Dkt. No. 53 at 3.  NWDC is thus ineligible for a Conditional Use Permit under the City's major modification review process.

RESPONSE TO CROSS-MOTION FOR SUMMARY JUDGMENT
(3:18-CV-05233-RBL) - 16
4841-6561-9107v.1 0088835-000005

declarants' legal conclusions, that the NWDC can apply for a Conditional Use Permit is contrary to the Ordinance and wrong.[20]

The City and its declarants next suggest that the NWDC could still expand with some other City approval or legislative action, variously suggesting a variance, rezone, or zoning code text amendment to accomplish this purpose. *See* City Br. at 20 (suggesting a variance process as a "simple [and] straightforward" option); Settle Expert Report, Dkt. No.65-1 at 9 (suggesting "the effect of the challenged Ordinance may be amended through a rezone (map amendment) . . . or through a zoning text amendment . . ."). But the Code specifically prohibits the granting of a variance to "***change the allowed use of a structure or land*** [or to] ***change the zoning requirements*** regulating the use of land." *See* TMC 13.06.645.A.5 (emphasis provided). No variance can cure the NWDC's prohibited status under the Ordinance.

Further, the suggestion that Plaintiff should seek a rezone or a zoning text amendment is absurd because either would require City Council approval. *See* TMC 13.05.020 (Table H) (rezone procedure); TMC 13.06.655 (amendments to zoning regulations). Plaintiff cannot be required to pursue extraordinary land use approvals or legislative acts from the City to cure the constitutional deficiencies in the Ordinance. Any such attempt would be futile, including because the City has refused to take any action to cure its unconstitutional and unlawful Ordinance in the almost two years since it was passed (including the alleged "scrivener's error" the City asserted it would correct almost a year and a half ago).

Even if the Ordinance permitted the NWDC to expand with a Conditional Use Permit (it does not), this would not provide adequate relief to Plaintiff because the discretionary land use approval process and decision would unconstitutionally restrict the federal land uses at the NWDC. The City does not contest that, prior to the Ordinance (and its predecessor Interim Ordinance), the NWDC could be expanded with the issuance of ministerial construction

---

[20] The City may ask the Court to defer to its interpretation of the Ordinance, but no such deference is due where the code language is unambiguous, or where the City's interpretation "was not part of a pattern of past enforcement, but a by-product of current litigation." *Ellensburg Cement v. Kittitas Cty.*, 179 Wn.2d 737, 753 (2014) (en banc) (internal marks and citations omitted).

RESPONSE TO CROSS-MOTION FOR SUMMARY JUDGMENT
(3:18-CV-05233-RBL) - 17
4841-6561-9107v.1 0088835-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

permits only, with no payment of Conditional Use Permit application or review fees (at least $5,000), and no discretionary review process. Per the City's Principal Planner, extensive application and review processes apply to CUP applications. Schultz Declaration, Dkt. No. 67 at 3-4. By way of example, NWDC's building permit applications would not be subject to pre-application community meeting requirements, public notice and hearing, or review by the City's Hearing Examiner (all of which Ms. Schultz's admits a Conditional Use Permit requires). Ms. Schultz also admits that the City's Hearing Examiner may impose operational and construction requirements as well as development conditions on any CUP approval. *See id.* at 4. These conditions would be based on a series of subjective Conditional Use Permit standards, including some that could be impracticable or impossible to satisfy. *See* Motion at 10-11. For example, any expansion to a nonconforming use must "have a positive impact on the surrounding uses and the area overall."  *See* TMC 13.06.640.P.2. In any event, for the reasons described above, any such Conditional Use Permit conditions would run afoul of federal law if they were applied to the NWDC as the Code requires.

## C.    Intergovernmental Immunity

The City's brief confuses different forms of immunity under the Supremacy Clause, rendering a significant portion of its analysis inapplicable to this dispute. Moreover, the City confuses case law interpreting intergovernmental immunity, suggesting that the doctrine does not apply to federal contractors and attempting to apply case law analyses regarding the doctrine's nondiscrimination analysis to the separate direct regulation analysis. To be clear, Plaintiff argues the intergovernmental immunity doctrine and relies on both the doctrine's direct regulation and the separate nondiscrimination analyses. Intergovernmental immunity applies to federal contractors just as it does the federal government, *Boeing*, 768 F.3d at 839, and the doctrine rejects the notion of a "de minimis" violation, *United States v. California*, 921 F.3d 865, 880 (9th Cir. 2019). For the reasons discussed below, the City's arguments fail, and the Ordinance is unconstitutional.

### 1.    *The City argues that derivative sovereign immunity does not apply to*

RESPONSE TO CROSS-MOTION FOR SUMMARY JUDGMENT
(3:18-CV-05233-RBL) - 18
4841-6561-9107v.1 0088835-000005

*Plaintiff in this case, where Plaintiff has raised no such argument.*

The City argues that Plaintiff's intergovernmental immunity argument fails because Plaintiff allegedly "has not shown how the Ordinance has impacted any directive it has received" from the federal government, relying heavily on a District Court order in separate and ongoing litigation, *Washington v. GEO Group, Inc.*, Case No. 3:17-cv-5806-RJB, 2019 WL 3565105 (W.D. Wash. Aug. 6, 2019), as well as *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016), *Keifer & Keifer v. Reconstruction Finance Corp.*, 306 U.S. 381, 59 S. Ct. 516 (1939), and *United States v. Boyd*, 378 U.S. 39, 84 S. Ct. 1518 (1964). City Br. at 23-24. As an initial matter, the City's suggestion that orders in *Washington* dictate the outcome in this litigation is wrong because *Washington* is a different case. The law at issue in *Washington*—the Minimum Wage Act—was enacted well before the NWDC's construction and applies (and was intended to apply) to a broad range of entities in Washington.[21] In contrast, the Ordinance here affects one entity only, the NWDC. It was passed by a City Council that understood that the Ordinance would impose new restrictions on the NWDC only, and whose members expressed clear and specific hostility to NWDC and its operations.

More importantly, the *Washington*, *Campbell-Ewald*, *Keifer*, and *Boyd* decisions do not address, and have nothing whatsoever to do, with intergovernmental immunity. The *Washington* order discusses and rules on derivative sovereign immunity. *Washington*, 2019 WL 3565105, at *5. **Derivative sovereign immunity is not intergovernmental immunity**. As *Campbell-Ewald* (cited by the City) explains, derivative sovereign immunity extends sovereign immunity to a contractor's conduct (for example, explicitly by contract with a federal agency, or by affirmative federal regulation). 136 S. Ct. 663, 673. In contrast, intergovernmental immunity precludes direct or discriminatory regulation against the federal government and its contractors. *Boeing Co. v. Movassaghi*, 768 F.3d 832 (9th Cir. 2016); *see also Lamb v. Martin Marietta Energy Sys., Inc.*, 835 F. Supp. 959, 962-63 (W.D. Ky. 1993) (discussing both derivative sovereign immunity and intergovernmental immunity doctrines). *Keifer* likewise

---

[21] *Washington v. GEO* is, of course, a separate case, and Plaintiff does not suggest herein in any way that it agrees with orders issued in that case, which is still pending.

RESPONSE TO CROSS-MOTION FOR SUMMARY JUDGMENT
(3:18-CV-05233-RBL) - 19
4841-6561-9107v.1 0088835-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

deals with derivative sovereign immunity, not intergovernmental immunity. *Boyd* lacks any discussion of direct regulation or discrimination, the two principles on which intergovernmental immunity turns, but instead focuses on Congress's decision not to extend tax immunity to a contractor, a core consideration for derivative sovereign immunity. *Boyd*, 378 U.S. 39, 48.[22]

The law is clear – "federal contractors are treated the same as the federal government itself" for purposes of intergovernmental immunity. *California*, 921 F.3d at 882 n.7; *see also Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 181, 108 S.Ct. 1704, 1710 (1988); *Boeing Co. v. Movassaghi*, 768 F.3d 832, 839 (9th Cir. 2016). There is no dispute that Plaintiff is a federal contractor engaged in activity at the NWDC dictated and required by the federal government. The City's suggestion that intergovernmental immunity does not extend to Plaintiff by virtue of Plaintiff's contractor status is wrong, and its attempt to merge derivative sovereign immunity and intergovernmental immunity misstates the law.

### 2. The Ordinance is a textbook example of a direct regulation of the NWDC property and therefore is invalid.

The City acknowledges, as it must, that it "may not directly regulate the Federal Government's **operations or property**" under the intergovernmental immunity doctrine. City Br. at 23 (emphasis added); *see also Blackburn v. U.S.*, 100 F.3d 1426, 1435 (9th Cir. 1996) ("under the intergovernmental immunity component of the Supremacy Clause to the United States Constitution, states may not directly regulate the Federal Government's operations or property."). The City's admission is fatal to its defense. By its terms, the Ordinance regulates the NWDC property (and, as a practical matter, only the NWDC property). The NWDC cannot obtain a Conditional Use Permit and thus cannot expand because it was zoned PMI, not M-1, on January 1, 2018. *See* TMC 13.06.400.C5, District Use Table, "Detention facility." The City and its declarants' alleged legal opinions that Plaintiff can simply apply for a Conditional Use Permit for the NWDC are contrary to the Ordinance's plain language and wrong. And even if Plaintiff could seek a Conditional Use Permit for the NWDC (it cannot), such permits

---

[22] Contrary to the instant dispute, *Boyd* further deals with "principles governing federal immunity from state taxation, a subject which has long troubled this Court." *Boyd*, 378 U.S. at 51 (J. Harlan, concurring).

RESPONSE TO CROSS-MOTION FOR SUMMARY JUDGMENT
(3:18-CV-05233-RBL) - 20
4841-6561-9107v.1 0088835-000005

objectively impose additional monetary and administrative burdens, as Plaintiff outlined in its Motion and the City does not refute, but rather confirms. Motion at 10-11; *see also* Schultz Decl., ¶¶ 4 & 8, Dkt. No. 67 at 2-3 (CUP process requires "additional review" beyond normal building permit). Either way, the Ordinance imposes a direct regulation on property used exclusively by a federal contractor and federal agencies to carry out operations within the federal government's exclusive purview. The Ordinance is therefore invalid with regard to the NWDC and any future federal immigration detention center.

Moreover, the City's repeated argument that NWDC operations have not yet been impacted because no permit for expansion has been filed fails. As discussed in Section II.A above, Plaintiff's challenge is facial, not as-applied, and the City's argument that there is no "as-applied" harm as of yet is an argument related to justiciability, not whether the Ordinance violates the Supremacy Clause on the merits. And the City's argument is wrong at any rate. By regulating how Plaintiff can expand or modify the NWDC to meet federal operational needs and obligations, the Ordinance facially regulates those operations.

The City's remaining arguments against direct regulation fail. The City argues that direct regulation occurs where a state or local government "put specific requirements and restrictions" on a specific federal government site or federal contractor, citing *Boeing*, 768 F. 3d at 836. The City is correct but misses the point. Just because a regulation that specifically and uniquely targets a federal contractor qualifies as direct regulation does not mean that regulations that have a broader scope and apply to other entities do not. Ninth Circuit precedent is clear that regulations may implicate and run afoul of the direct regulation prong even if the law itself does not explicitly single out or reference the federal government or its contractor. *See United States v. City of Arcata*, 629 F.3d 986, 991 (9th Cir. 2010) (direct regulation prong invalidates state statute that attempts to impose a direct regulation on federal government, "[t]hough the state statute did not target the federal government alone"); *Blackburn*, 100 F.3d at 1435 (direct regulation prong violated where law did not identify federal government or contractor in its language or the law's application). The relevant inquiry is whether the

1    Ordinance directly regulates the NWDC. It does and therefore is invalid regarding the NWDC.

2         The City next suggests the Court disregard cases involving the U.S. Postal Service. The

3    City does not give a reason to do so beyond noting that the Postal Service exists in a "heavily

4    regulated area," which is also true of federal immigration and detention. That the U.S. Postal

5    Service has been involved in multiple cases involving the intersection of intergovernmental

6    immunity, federal contractors, and local building and zoning codes is not surprising given the

7    provenance of post offices in every state and jurisdiction. These reasons underscore why Postal

8    Service cases are an appropriate guide for the instant dispute. The City's attempts to downplay

9    specific Postal Service cases likewise fail. The City suggests that *U.S. Postal Service v. City of

10   Hollywood* is irrelevant because it does not use the term "intergovernmental immunity." City

11   Br. at 24. That is true but irrelevant; there is no magic word requirement. *Hollywood*'s analysis

12   clearly applies the intergovernmental immunity doctrine, but to avoid doubt, the court identifies

13   the doctrine it is applying as from *M'Culloch v. Maryland*, *Hollywood*, 974 F.Supp. at 1462,

14   and "[t]he doctrine of intergovernmental immunity arose from the Supreme Court's decision

15   in *McCulloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819)," *Arcata*, 629 F.3d at

16   991. As the *Hollywood* Court found, the intergovernmental immunity doctrine bars application

17   of building codes, including to entities under contract with the federal government, even where

18   "no building permit ha[d] been sought for the project at the subject property." *Hollywood*, 974

19   F.Supp. at 1461. Likewise, in *U.S. Postal Service v. Town of Greenwich*, the Court held that

20   "the state building code cannot be applied to the lessors of land to the Postal Service . . .

21   because it conflicts with federal law." 901 F. Supp. 500, 507 (D. Conn., 1995). Thus, even the

22   mere application of the building code—which was ministerial and far less onerous than the

23   Conditional Use Permit process the City (incorrectly) argues applies—violated the Supremacy

24   Clause. This result is consistent with the Ninth Circuit's conclusion that there is no "de minimis

25   exception to the doctrine of governmental immunity," and local governments may not "control

26   federal operations" in "***any*** manner." *California*, 921 F.3d at 883, 880 (emphasis added).

27        The City next argues that *U.S. v. Town of Windsor*, 496 F.Supp. 581 (D. Conn. 1980), is

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1   analogous to the instant dispute and undermines Plaintiff's direct regulation argument. The City

2   does not explain why and is wrong in any event because it again confuses derivative sovereign

3   immunity with intergovernmental immunity. The *Windsor* Court found that there was nothing

4   indicating that the federal government had extended its sovereign immunity to a private party

5   involved in a joint-venture with the federal government. *Id*. at 592. That is a derivative

6   sovereign immunity analysis. *See Campbell-Ewald*, 136 S. Ct. at 673 (no derivative sovereign

7   immunity where such "was not validly conferred") (internal citation omitted). Moreover, the

8   City's block quote from *Windsor* is itself largely a quote from the Third Circuit case *U.S. v.*

9   *Pennsylvania Environmental Hearing Board*, which itself addressed whether a private entity

10  was exempt from local fines "under the doctrine of sovereign immunity." 584 F.2d 1273, 1276-

11  77 (3rd. 1978). And even if *Windsor* were an intergovernmental immunity case (it is not),

12  *Windsor* found that the local town could ***not*** impose building requirements or fees on the

13  federal government. *Id*. Under binding Ninth Circuit jurisprudence, federal contractors are

14  treated the same as the federal government for purposes of intergovernmental immunity.

15  *California*, 921 F.3d at 882 n.7; *Boeing*, 768 F.3d at 839.

16      Finally, the City suggests that a separate order in the *Washington v. GEO* litigation

17  found a lack of intergovernmental immunity on the basis of both the direct regulation and

18  nondiscrimination analyses. City Br. at 22 (citing *Washington v. GEO*, 2018 WL 6448778). No.

19  The *Washington* Court was clear that the issue in dispute was limited to "the second theory,

20  that the MWA discriminates against the Defendant." *Washington v. GEO Grp., Inc.*, 2018 WL

21  6448778, at *3. Simply put, the issue of direct regulation was not put before the Court.

22      The Ordinance prohibits the NWDC from ever expanding or undergoing modifications.

23  That is a direct regulation of Plaintiff's property. And even if this prohibition did not exist, the

24  City does not dispute that Plaintiff must still submit to a costly, burdensome, and discretionary

25  Conditional Use Permit process. Whether Plaintiff has already applied for such a permit is of

26  no moment on the merits of a facial Supremacy Clause challenge. The Ordinance violates the

27  intergovernmental immunity direct regulation prong and is invalid as to the NWDC.

RESPONSE TO CROSS-MOTION FOR SUMMARY JUDGMENT
(3:18-CV-05233-RBL) - 23
4841-6561-9107v.1 0088835-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

**3. The Ordinance discriminates against the NWDC because it continues to treat the NWDC differently than correctional facilities and because the City understood that the Ordinance would place new restrictions on the NWDC only.**

The City again heavily relies on *Washington v. GEO* in arguing that the Ordinance does not run afoul of the nondiscrimination analysis. But again, the Washington Minimum Wage Act and the Ordinance are fundamentally different. The Ordinance's genesis was the Interim Ordinance, which identified the NWDC by name and voiced alarm at the NWDC's potential expansion. The Interim Ordinance was extended and then eventually made permanent in the form of the current Ordinance at issue. Although the City exorcised all references to the NWDC, the City understood that the NWDC was the only detention center within the City and was zoned in an area that the Ordinance would preclude from even being eligible for a Conditional Use Permit. Statements by Councilmembers make clear that the Council had animus towards the NWDC. And most importantly, the City does not dispute that (1) the Ordinance continues to treat the NWDC differently than local government-run correctional facilities, or (2) the City knew when the Ordinance passed that the NWDC would be the only facility affected by the Ordinance's regulations. None of these facts exist with regard to the Washington Minimum Wage Act.

The City's responses do not change these facts. ***First***, the City asserts that the difference between the treatment of the NWDC and correctional facilities was just a scrivener's error that will be corrected. As an initial matter, there is no competent evidence supporting the "scrivener's error" position. Although proposed amendments to the Ordinance added and removed the NWDC-specific restriction, no addition was ever proposed for correctional facilities. The City submits a declaration from its attorney asserting he spoke with one Councilmember who made one of the motions to include the language, and she intended to apply the restriction to correctional facilities as well. Victor Decl., ¶ 3, Dkt. No. 66 at 2. But this is an unsworn statement by a separate person to prove the matter asserted; it is inadmissible

RESPONSE TO CROSS-MOTION FOR SUMMARY JUDGMENT
(3:18-CV-05233-RBL) - 24
4841-6561-9107v.1 0088835-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

hearsay and cannot support the City's position.[23] FRE 801(c) & 802. The City's position that the distinction between the NWDC and correctional facilities was not intended is simply not supported by competent facts but instead is a conclusory allegation, which is insufficient to defeat summary judgment. *Fisher v. Durham,* 881 F.2d 1083 (9th Cir. 1989) (conclusory statements insufficient to defeat summary judgment). Moreover, the City's allegation that it did not mean to treat the NWDC and correctional facilities differently rings hollow—the City has been saying so since spring 2018 but took no action until Plaintiff underwent the burden and expense of filing its Motion for Partial Summary Judgment. At any rate, even if the City does amend the Ordinance to remove the alleged scrivener's error, discrimination remains because, as the City understands, the Ordinance places restrictions on the NWDC only and will place no new restrictions on any local government-run correctional facility. *See California*, 921 F.3d at 884 "provisions that impose an additional economic burden exclusively on the federal government are invalid under the doctrine of intergovernmental immunity.").

**Second**, the City relies on language in *Washington* that the "Federal Government [had] discretion to decide whether to extend its cloak of sovereign immunity to contractors, *e.g.*, by terms of a contract" and argues that Plaintiff points to no such contract provision. City Br. at 27 (quoting *Washington*, 2018 WL 6448778, at *4). But intergovernmental immunity does not turn on whether the federal government explicitly extends its sovereign immunity to a contractor (by contract or otherwise). Again, the District Court is referencing derivative sovereign immunity, a doctrine at issue in the *Washington* litigation but not here. *Compare* Washington, 2018 WL 6448778, at *4 *with Washington*, 2019 WL 3565105, at *5 (discussing GEO's derivative sovereign immunity defense); *see also* Section II.C.1, above. The City's confusion over these doctrines renders its argument irrelevant.

**Third**, the City misplaces its reliance on *U.S. Postal Service v. City of Berkeley*, No. C

---

[23] Even if this evidence was admissible, it relates to one councilmember only. Eight councilmembers and the mayor voted in favor of the Ordinance as written to impose greater burdens on the NWDC than correctional facilities. Dkt. No. 63-1 at 13. One councilmember's intention, which is contrary to the Ordinance's plain language, does not constitute a change of intention for the entire Council or the Ordinance.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

16-04815 WHA, 2018 WL 2188853 (N.D. Cal. May 14, 2018). In that case, the City of Berkeley passed an ordinance that added restrictions to several parcels of land, including parcels that were privately owned and parcels owned by USPS. *Id*. at *1. The parties stipulated that Berkeley did not discriminate against the USPS, but instead against potential future buyers of the USPS property. *Id*. at *3. The Court found that the "uniform effect" of the ordinance was the same on all parcels, regardless of who owned them. *Id*. at *4. The City here does not address this holding, but instead focuses on a separate theory that the USPS advanced: that the government can take action after a regulation is enacted to retroactively cause the regulation to violate the nondiscrimination principle. *Id*. at *4. Plaintiff here does not raise that argument, but instead contends (in addition to the Ordinance's explicit disparate treatment of the NWDC discussed above) that the Ordinance included a discriminatory effect the second it passed. The NWDC is the only facility the Ordinance will effect as a practical matter.

Although the *Berkeley* Court disagreed that the practical effect of the ordinance in that case would have been felt by the USPS alone, the Court agreed in a prior, published opinion the theory that an ordinance may violate the intergovernmental immunity doctrine if the ordinance's effects are felt by the federal government alone. At the outset of the *Berkeley* dispute, the City moved to dismiss. 228 F.Supp.3d 963 (N.D. Cal. Jan. 12, 2017). The Court rejected Berkeley's motion on the basis that USPS alleged that "the practical effects of the [ordinance] have fallen only on the post office." *Id*. at 968 (internal punctuation omitted). Although this contention turned out to be incorrect, the principle that an ordinance may be rendered unconstitutional by its discriminatory effect is sound. *Id*. at 969. That is the exact case here. There is no dispute that the NWDC is the only facility affected by the Ordinance, and the City knew that when it passed the Ordinance. An ordinance that makes the federal government (or its contractor) the "sole target" of regulation violates intergovernmental immunity's nondiscrimination analysis. *City of Arcata*, 629 F.3d at 989, 991. The Ordinance thus violates the nondiscrimination principle and is invalid as to the NWDC.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

### D.    Preemption

The City correctly notes that preemption requires congressional intent, but then moves beyond the doctrine's correct scope and asserts that preemption cannot occur if there is any way the statute can be read so as to not preempt state or local law. For this latter proposition, the City relies solely on a dissenting opinion. While there may be an "assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress," such "*assumption of nonpre-emption is not triggered when the State regulates in an area where there has been a history of significant federal presence*." *United States v. Locke*, 529 U.S. 89, 108, 120 S. Ct. 1135, 1147 (2000) (emphasis added); *see also Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1023 (9th Cir. 2013) (same). *Locke* dealt with state law bearing on "national and international maritime commerce," an area of significant historical federal presence, and as such the assumption of non-preemption did not trigger. *Locke*, 529 U.S. 108. Likewise, there can be no dispute that matters related to immigration, including detention of immigrants pursuant to federal law and the facilities necessary for such detention, is an area of longstanding and significant federal presence. *Toll v. Moreno*, 458 U.S. 1, 10, 102 S. Ct. 2977, 2982 (1982) ("Our cases have long recognized the preeminent role of the Federal Government with respect to the regulation of aliens within our borders" and noting constitutional bases for such preeminent role); *see also United States v. Arizona*, 641 F.3d 339, 356 n.16 (9th Cir. 2011) ("no presumption against preemption" in context of state law directing police to verify immigration status), *reversed on other grounds by* 567 U.S. 387, 132 S. Ct. 2492 (2012).

Here, Plaintiff brings a facial challenge to the Ordinance, but only in the context of its application to the NWDC, an immigration detention center used by ICE, DOJ, and other federal agencies and for the exclusive purpose of carrying out federal immigration law. Because the challenge is limited to possible applications of the law against a federal immigration detention center, the preemption question turns on whether the Ordinance conflicts with federal immigration law. There is therefore no presumption against pre-emption.

RESPONSE TO CROSS-MOTION FOR SUMMARY JUDGMENT
(3:18-CV-05233-RBL) - 27
4841-6561-9107v.1 0088835-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

### 1.      Congress has occupied the field regarding detention centers.

The City does not dispute that the Immigration and Nationality Act "represent[s] a comprehensive and complete code covering all aspects of admission of aliens to this country." *Toll v. Moreno*, 458 U.S. 1, 10, 102 S. Ct. 2977, 2982 (1982). Instead, the City again mis-analogizes this case to the *Washington* litigation, pushing that case beyond its logical bounds. In *Washington*, the Court noted that field preemption occurred in two ways—a federal interest so dominant that state law enforcement is precluded, or a pervasive framework of federal regulation so pervasive Congress left no room for local governments to supplement it. *Washington v. GEO*, 283 F.Supp.3d 967, 976 (W.D. Wash. 2017). The District Court found no recognized interest that addressed a "uniformity of detention programs," as GEO had argued, but instead held that the pertinent area of regulation for examination of the Minimum Wage Act claim was "detainee wages." 283 F.Supp.3d at 976. Because the Court found Congress had specified detainee work rates in the past but had declined to do so for decades, and because it found no other comprehensive federal regulatory scheme addressing the issue, the Court concluded there was no field preemption. *Id*. at 977

This case is very different. As a conceptual matter, there can be no dispute that detaining immigrants suspected of violating immigration laws for removal proceedings is an aspect of "regulation of aliens within our borders" and "admission of aliens to this country." *Toll*, 458 U.S. at 10. Likewise, federal immigration detention centers, and the ability to expand or modify them as dictated by the federal government's needs or administration of federal law, are an indisputable component of such detention. But beyond these clear concepts, the Immigration and Nationality Act explicitly includes immigration detention centers—including those leased by the federal government like the NWDC—within its purview. *See* 8 U.S.C. §1231(a) & (g) (addressing the detention of immigrants and places of detention). Importantly, the City does not dispute that the Immigration and Nationality Act occupies the field of federal immigration administration.

By placing regulations on the NWDC, the Ordinance invades an area of law that falls in

RESPONSE TO CROSS-MOTION FOR SUMMARY JUDGMENT
(3:18-CV-05233-RBL) - 28
4841-6561-9107v.1 0088835-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

the federal government's purview alone. The Ordinance is thus invalid under field preemption.

### 2. The Ordinance is an obstacle to accomplishing the full purpose of Congress.

Implied preemption that does not foreclose an entire field from local regulation comes in two forms: conflict preemption and obstacle preemption. The latter exists where local law stands as an obstacle to the "accomplishment and execution of the full purposes and objectives" of the federal government." *English v. General Elec. Co.*, 496 U.S. 72, 79, 110 S.Ct 2270 (1990). Plaintiff asserts the Ordinance is invalid under obstacle preemption.[24]

The City responds primarily by relying on the alleged presumption against preemption, which does not apply here. *See* Section II.D, above. The City further relies on *Washington*, 283 F. Supp.3d at 978, where the Court concluded conflict and obstacle preemption did not exist. But, again, this case is different. In *Washington*, there was an outstanding question of factual dispute that the Court found precluded a finding of conflict or obstacle preemption on the motion to dismiss pending at that time. *Id.* When the Court later re-addressed the issue on summary judgment, the Court concluded that there was no conflict or obstacle because simultaneous compliance with both federal law and the Washington Minimum Wage Act was possible. *Washington*, 2019 WL 3565105, at *6.

No so here. The Ordinance is facially unconstitutional because it prohibits (or at least burdens) any NWDC expansion or modification due to the NWDC's zoning status on January 1, 2018. Federal law dictates that the U.S. Attorney General "shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." 8 U.S.C. § 1231(g)(1). The Attorney General is authorized to lease a facility from a third party to accomplish this command. 8 U.S.C. § 1231(g)(2). The "full purpose and objectives" of this federal command cannot be satisfied if the existing NWDC—which is and has always been used exclusively for federal immigration detention purposes—cannot expand or undergo

---

[24] Plaintiff acknowledges using the term "conflict" preemption in its opening brief, as the term is sometimes used to describe obstacle preemption. *See U.S. v. City of Pittsburg, Cal.*, 661 F.2d 783, 785 (9th Cir. 1981). Plaintiff's argument in its opening brief is clear that it advances obstacle preemption. Dkt. No. 50 at 21.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1   modifications to meet the federal government's immigration needs, but instead is frozen in

2   place at the Ordinance's command. Nor can the Ordinance hinder such through its burdensome

3   and discretionary Conditional Use Permit process.

### 3. The statutory framework, structure, and purpose of federal immigration law expressly preempts any state or local law that purports to regulate federal immigration detention facilities.

6   The City correctly acknowledges that, when determining whether express preemption

7   exists, courts "consider the statutory framework, as well as the structure and purpose of the

8   statute as a whole." City Br. at 29 (quoting *Washington*, 283 F.Supp.3d at 975). Here, the

9   framework of federal immigration and detention statutes demonstrates that zoning laws are

10  preempted to the extent they apply to immigration detention centers. Specifically, Plaintiff

11  argues that federal buildings are required to only consider local zoning laws—they do not need

12  to comply with them. 40 U.S.C. § 3312(c). And even if the ordinary mean of "consider" is

13  equivalent to "comply" (it is not), any obligation to consider/comply is expressly eliminated

14  with regard to "any public building to which section 241(g) of the Immigration and Nationality

15  Act (8 U.S.C. § 1231(g))… applies." 40 U.S.C. § 3301(b). INA Section 241(g) applies to

16  "places of detention for aliens detained" including non-federal third parties such as the NWDC.

17  *California*, 921 F.3d at 882 n.7 (Section 241(g) includes "both federal facilities *and* nonfederal

18  facilities with which the federal government contracts"). The Ordinance thus cannot impose

19  zoning restrictions on the NWDC.

20  The City argues there is no preemption because the statute that directs consideration of

21  zoning laws allegedly applies to buildings "constructed or altered by the Administration or any

22  other federal agency" only. City Br. at 30 (quoting 40 U.S.C. § 3312(c)). But the City fails to

23  "consider the statutory framework, as well as the structure and purpose of the statute as a

24  whole," as it admits it must. City Br. at 29. The exemption from all commands in 40 U.S.C.

25  chapter 33, including the command to "consider" zoning laws, does not apply to "public

26  buildings to which section 241(g)" applies. 40 U.S.C. § 3301(b). Section 3301 separately

27  defines a "public building" as a building "which is generally suitable for use" by one or more

federal agencies. 40 U.S.C. § 3301(a)(5). There is no requirement that a building be owned by the federal government to be a "public building" under Section 3301, and there is no dispute that ICE, DOJ, and other federal agency personnel physically use the NWDC to carry out immigration policy. The NWDC is thus a "public building." Because it falls within the scope of INA Section 241(g) (8 U.S.C. §1231(g)), the NWDC is excused from even considering local zoning laws. *Accord Greenwich*, 901 F. Supp. at 500 (concluding that a statute limited in scope to the Postal Service, 39 U.S.C. § 401(5), preempted building regulations as to a private party because the private party was engaged in work on behalf of the Postal Service that otherwise fell within the scope of the statute).

### E.     Plaintiff is Entitled to Injunctive and Declaratory Relief.

By demonstrating the unconstitutionality of the Ordinance, Plaintiff has shown it is entitled to injunctive and declaratory relief. The City's suggestion that it somehow did not have notice that Plaintiff sought a declaration that the Ordinance is unconstitutional with regard to the NWDC and an injunction prohibiting the Ordinance's enforcement against the NWDC has no merit – Plaintiff has sought that relief since it filed the Complaint and continued to pursue that relief even after the Court concluded it had suffered no money damages. The City's apparent suggestion that no equitable relief is warranted in the face of an unconstitutional ordinance is advocacy for a constitutional violation without recourse.

### 1.     *Plaintiff is entitled to injunctive relief.*

Plaintiff has met the elements of a permanent injunction. A plaintiff is entitled to a permanent injunction when it shows: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837, 1839, 164 L. Ed. 2d 641 (2006). Courts have "equitable discretion" to grant a permanent injunction. *Id.*

RESPONSE TO CROSS-MOTION FOR SUMMARY JUDGMENT
(3:18-CV-05233-RBL) - 31
4841-6561-9107v.1 0088835-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

"It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quotations and citation omitted). Because the Ordinance places unconstitutional regulations on the NWDC, which Plaintiff owns and operates under federal government supervision and contract, Plaintiff has shown it will suffer irreparable harm, and constitutional violations cannot be adequately remedied through damages. *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997). By demonstrating the Ordinance violates the Supremacy Clause, Plaintiff has established that both the public interest and the balance of equities favor a permanent injunction. *See Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014) (granting a preliminary injunction when it is clear that it "would not be equitable or in the public's interest to allow the state … to violate the requirements of federal law, especially when there are no adequate remedies available") (citation omitted); *Melendres*, 695 F.3d at 1002 ("the public interest and the balance of the equities favor prevent[ing] the violation of a party's constitutional rights") (quotations omitted). Undoubtedly, the public has an interest in remedying constitutional violations. Thus, if the Court finds the Ordinance unconstitutional, an injunction precluding enforcement against the NWDC is proper.

### 2.     *Plaintiff is entitled to declaratory relief.*

Plaintiff is entitled to declaratory judgment because an unconstitutional ordinance must be clarified and settled from uncertainty. Declaratory relief is appropriate "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir. 1984). Courts have "sound discretion" to grant a declaratory relief. *Id.* A declaration here will make clear the Ordinance's constitutional contours, its effects on the rights of Plaintiff and the NWDC, and the City's responsibilities in enacting local laws. It will remove uncertainty, insecurity, and controversy associated with the Ordinance's unconstitutional burdens from the Plaintiff as a federal contractor assisting with the execution of federal immigration policy. If

RESPONSE TO CROSS-MOTION FOR SUMMARY JUDGMENT
(3:18-CV-05233-RBL) - 32
4841-6561-9107v.1 0088835-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1   the Court finds the Ordinance unconstitutional, a declaratory judgment stating as much is

2   proper.

3   **F.      Plaintiff is Entitled to Attorneys' Fees Under 42 U.S.C. § 1988.**

4           The City's assertion that Supremacy Clause claims do not support a fee award under

5   Section 1988 is of no moment because a plaintiff who prevails on a claim not cognizable under

6   § 1983 may recover fees under § 1988 on the basis of other, pendent constitutional claims, even

7   if they remain unadjudicated. *Maher v. Gagne*, 448 U.S. 122, 127, 100 S.Ct. 2570, 65 L.Ed.2d

8   653 (1980); *Westmark Dev. Corp. v. City of Burien*, 504 F. App'x 560, 562 (9th Cir. 2013). In

9   addition to its Supremacy Clause claim, Plaintiff brings Equal Protection and Due Process

10  claims under Section 1983, which provides discretionary attorneys' fees under Section 1988.

11  *See Legal Def. Grp. v. Adams*, 657 F.2d 1118, 1123 (9th Cir. 1981) ("Section 1983 provides

12  liability for ... the deprivation of any rights, privileges, or immunities secured by the

13  Constitution and laws ... Section 1988 provides discretionary attorneys fees in any action or

14  proceeding to enforce a provision of sections... 1983"). Because Plaintiff's Equal Protection,

15  Due Process, and Supremacy Clause claims are interrelated, Plaintiff can recover attorneys'

16  fees even if this Court only rules on Plaintiff's Supremacy Clause claim. *See Gerling Global*

17  *Reinsurance Corp. of Am. v. Garamendi*, 400 F.3d 803, 808 (9th Cir.2005) (holding attorneys'

18  fees recoverable when the plaintiffs prevailed on their implied preemption claim, even though

19  separate claims that supported a fee award under Section 1988 were not adjudicated).

20          To recover fees where the plaintiff has not prevailed on a claim under Section 1988, the

21  "plaintiff must be the prevailing party on a non-fee claim that arises out of a common nucleus

22  of operative facts, and must demonstrate that the constitutional claim is substantial." *Gerling,*

23  400 F.3d at 808. Plaintiff meets these requirements.

24          *First*, the Supremacy Clause, Due Process, and Equal Protection claims arise from the

25  same, single act: the City's unconstitutional passage of the Ordinance. A "common nucleus of

26  operative fact" is found where "fee-supporting claims are so interrelated with non-fee claims

27  that plaintiffs would ordinarily be expected to try them all in one judicial proceeding." *Id.*

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1    (quotations and citation omitted). Thus, in *Gerling*, the plaintiffs brought claims under the no-

2    fee Commerce Clause and fee-supporting Due Process and Equal Protection Clauses and

3    "correctly attempted to try all of their issues in one proceeding" because they all arose from a

4    common nucleus of operative fact – California's attempted to enforce the Holocaust Victim

5    Insurance Relief Act on plaintiffs. *Id.* at 809. Like the plaintiffs' claims in *Gerling*, Plaintiff's

6    Supremacy Clause, Due Process, and Equal Protection claims all challenge the constitutionality

7    of this Ordinance and its improper regulation of the NWDC. Plaintiff's claims arise from a

8    common nucleus of operative fact and are appropriately brought in one proceeding.

9            ***Second***, Plaintiff's Equal Protection and Due Process claims are substantial. "A claim is

10   constitutionally insubstantial if it is essentially fictitious…wholly insubstantial … obviously

11   frivolous … [or] obviously without merit." *Gerling*, 400 F.3d at 808 (quotations and citation

12   omitted). Although the pending motions for partial summary judgment do not address

13   Plaintiff's Equal Protection and Due Process claims, sufficient evidence exists to demonstrate

14   they are neither "frivolous or obviously without merit," but instead are substantial. The City

15   acknowledges the substantiality of Plaintiff's Equal Protection claim through asserting that it

16   plans to revise the Ordinance to treat correctional facilities the same as the NWDC because of

17   Plaintiff's Equal Protection claim. *E.g.* Victor Decl., Ex. A, Dkt. No. 66-1 at 2 (draft ordinance

18   proposing to revise alleged "scrivener's error" because of "equal protection violation claim by

19   The GEO Group in its federal lawsuit against the City"); City's Answer, Dkt. No. 10 at 12, ¶ 10

20   (asserting correction of scrivener's error is forthcoming and, "[t]herefore, Plaintiff's equal

21   protection claim will be rendered moot and, therefore, non-justiciable."). Critically, the City did

22   not suggest any scrivener's error or intent to correct the same until after Plaintiff filed its

23   lawsuit, and nearly a year and a half later, Plaintiff is still waiting. The City acknowledges that,

24   despite realizing it treated correctional facilities more favorably than the NWDC and pledging

25   to correct the issue, it did not even introduce legislation (which is less than two pages long)

26   until August 7, 2019 – after Plaintiff requested to depose the City Councilmembers and filed its

27   Motion for Partial Summary Judgment.

RESPONSE TO CROSS-MOTION FOR SUMMARY JUDGMENT
(3:18-CV-05233-RBL) - 34
4841-6561-9107v.1 0088835-000005

Likewise, a Due Process claim exists if the City exhibits a sudden change in course, malice, bias, or pretext based on political animus. *See Shanks v. Dressel*, 540 F.3d 1082, 1089 (9th Cir. 2008); *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 920 F.2d 1496, 1508 (9th Cir.1990). Despite postponing depositions at the City's request, Plaintiff has submitted evidence with this brief indicating animus by the City Council towards federal immigration policies. The City has further admitted that it previously declared public support for the NWDC, City's Answer, Dkt. No. 10 at 3, ¶¶ 13-14, which support continued until shortly before the Interim Ordinance passed. The City may dispute that this evidence proves either an Equal Protection or Due Process claim, but that is not the standard. Rather, Plaintiff must show its claims are not "frivolous or obviously without merit," which burden Plaintiff meets.

If Plaintiff prevails on its Supremacy Clause claim, the Court should permit Plaintiff to file a separate motion seeking an award of attorneys' fees.

### III.   CONCLUSION

The Ordinance prohibits any detention facility from expanding or undergoing modifications without a Conditional Use Permit, and prohibits the NWDC from ever securing a Conditional Use Permit because it was not zoned M-1 on January 1, 2018. The Ordinance places restrictions on the NWDC that do not apply to correctional facilities operated by the local government, and as a practical matter, impose no restrictions on any facility other than the NWDC. The Ordinance therefore imposes a direct regulation on the NWDC's property and discriminates against the lone federal detention facility in Tacoma. It is therefore invalid under the Supremacy Clause's intergovernmental immunity doctrine. Moreover, the Ordinance's attempt to regulate a federal immigration detention center is contrary to express and implied restrictions on local government regulation in the area of immigration and detention. The Ordinance therefore is preempted. Because the Ordinance is facially unconstitutional with regard to the NWDC, Plaintiff's dispute against the City is justiciable.

For these reasons, the Court should grant Plaintiff's Motion for Partial Summary Judgment and deny the City's Cross-Motion for Partial Summary Judgment. The Court should

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1    further direct Plaintiff to file a motion seeking attorneys' fees.

2            DATED this 3rd day of September, 2019.

3

4                                        By s/ Clayton P. Graham

5                                        DAVIS WRIGHT TREMAINE LLP
                                         Clayton P. Graham, WSBA # 38266
6                                        Joseph P. Hoag, WSBA #41971
                                         Grace Thompson, WSBA #54218
7                                        920 Fifth Avenue, Suite 3300
                                         Seattle, WA 98104
8                                        Telephone: 206.757.8052
                                         Fax: 206.757.7052
9                                        E-mail: claytongraham@dwt.com
                                         E-mail: josephhoag@dwt.com
10                                       E-mail: gracethompson@dwt.com
11
                                         and;
12
                                         III Branches Law, PLLC
13                                       Joan K. Mell, WSBA #21319
                                         1019 Regents Blvd. Ste. 204
14                                       Fircrest, WA 98466
                                         Telephone: 253.566.2510
15                                       E-Mail: joan@3brancheslaw.com
16
17                                       Attorneys for The GEO Group, Inc.
18
19
20
21
22
23
24
25
26
27

RESPONSE TO CROSS-MOTION FOR SUMMARY JUDGMENT
(3:18-CV-05233-RBL) - 36                                        Davis Wright Tremaine LLP
    4841-6561-9107v.1 0088835-000005                              LAW OFFICES
                                                               920 Fifth Avenue, Suite 3300
                                                               Seattle, WA  98104-1610
                                                            206.622.3150 main · 206.757.7700 fax

1

**CERTIFICATE OF SERVICE**

2       I hereby declare under penalty of perjury under the laws of the State of Washington

3   and the United States that, on the date indicated below, I electronically filed the foregoing

4   document with the Clerk of the Court using the ECF system which will send notification of

5   such filing to the following:

6       Steve Victor
        Tacoma City Attorney's Office
7       747 Market St, Ste 1120
        Tacoma, WA 98402-3701
8       Email: svictor@ci.tacoma.wa.us

9

10      Brian C. Augenthaler
        Michael C. Walter
11      Kimberly Waldbaum
        Keating, Bucklin & McCormack, Inc. P.S.
12      801 Second Avenue, Suite 1210
        Seattle, WA 98104-1518
13      Email: mwalter@kbmlawyers.com
               baugenthaler@kbmlawyers.com
14             kwaldbaum@kbmlawyers.com

15      DATED this 3rd day of September, 2019.

16

17                                  By s/ Clayton P. Graham
                                       Clayton P. Graham, WSBA # 38266
18

19

20

21

22

23

24

25

26

27

RESPONSE TO CROSS-MOTION FOR SUMMARY JUDGMENT
(3:18-CV-05233-RBL) - 37
4841-6561-9107v.1 0088835-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax